[Civ. No. 4201. First Appellate District, Division One.—May 22, 1922.]

## THOMAS CARLSEN, Appellant, v. FRED W. DIEHL, Respondent.

[1] NEGLIGENCE—INJURY TO WORKMAN IN FERRY DRIVEWAY—EVIDENCE—INAPPLICABILITY OF DOCTRINE OF LAST CLEAR CHANCE.—The giving of an instruction on the doctrine of the last clear chance in an action for personal injuries received while engaged in loading a truck near the driveway to a ferry entrance is not justified, where it appears from the evidence that the plaintiff was injured by the running over him of the rear wheels of an automobile truck of the defendant after the front end of the truck had passed him in safety.

[2] ID.—DOCTRINE OF LAST CLEAR CHANCE—APPLICABILITY—KNOWLEDGE OF IMPENDING DANGER.—To charge a person, upon the doctrine of last clear chance, with responsibility for injuring another whose own negligence proximately contributes to such injury, a knowledge of the impending danger is essential.

[3] ID.—PUBLIC PLACE—DEGREE OF CARE—INAPPLICABILITY OF RULE. The rule that a person compelled by the nature of his work to be at a particular place is to be held free from negligence should not be extended to include persons working in a hazardous position with the permission of the owner of a public place, such as railroad stations and the like, and not forced to remain in a particular place as a matter of duty.

[4] ID.—EVIDENCE—DOCTRINE OF RES IPSA LOQUITUR—INAPPLICABILITY. The doctrine of *res ipsa loquitur*, the effect of which is to lighten the burden of proof resting upon the plaintiff by permitting the jury to indulge in a presumption that the defendant was negligent, does not apply in an action for personal injuries to a person in a ferry driveway entrance, where there was direct testimony as to the cause of the accident, or where the facts would permit an inference that it was due to a cause other than defendant's negligence as reasonably as that it was due to such negligence.

1. Applicability of doctrine of last clear chance where danger not actually discovered, notes, 55 L. R. A. 415; 36 L. R. A. (N. S.) 957.

4. Relation of doctrine of *res ipsa loquitur* to burden of proof, notes, Ann. Cas. 1914D, 908; 113 Am. St. Rep. 987; 16 L. R. A. (N. S.) 527; L. R. A. 1916A, 930.

[5] ID.—ACTION BY INJURED EMPLOYEE—PLEADING—PARTIES—ACT OF 1913.—Under section 31 of the Workmen's Compensation Act of 1913 making a claim for compensation an assignment to the employer of the right of the injured employee to recover damages from a third person, the employer and insurance carrier are necessary parties to an action by the employee against such third party after compensation had been paid.

[6] NEW TRIAL—DISCRETION—APPEAL.—The granting or refusing of a new trial are matters largely within the discretion of the trial court, and it is only when this discretion has been abused that an appellate court will reverse the order.

APPEAL from an order of the Superior Court of the City and County of San Francisco granting a new trial. Bernard J. Flood, Judge. Affirmed.

The facts are stated in the opinion of the court.

Donald McKisick and J. J. Dunne for Appellant.

Ford & Johnson for Respondent.

·KERRIGAN, J.—This is an appeal by Thomas Carlsen, plaintiff, from an order granting a new trial. The action was instituted by Carlsen to recover damages for personal injuries sustained by him while engaged in loading a truck near the driveway of the entrance to what is known as the Oakland Harbor ferry. This ferry is used for the purpose of transporting vehicles and passengers across San Francisco Bay. The entrance on the western side of the bay is south of the ferry building in San Francisco, access to the ferry slip being from East Street. On the left side of said drive leading to the slip is a ticket office of the company operating the ferry, and in front of said ticket office is a scale. The testimony indicates that the truck of the defendant herein, operated by one William B. Robertson, stopped opposite the scale, Robertson procured a ticket and proceeded to drive toward the boat. To the left or north of the driveway stood a wagon of the Union Transfer Com-

pany which the plaintiff and another were loading. The automobile truck of the defendant (respondent) in moving from its place upon or opposite the scale proceeded toward the boat along the extreme northerly part of the driveway, and in doing so approached and passed the truck which the plaintiff was engaged in loading. There is a sharp conflict in the evidence as to the precise location of this truck, the plaintiff contending that the loading point was approximately ten feet north of the driveway, and defendant insisting that the distance was only four or five feet. In any event in driving toward the ferry slip the truck came in close proximity to the plaintiff; the front end of the truck passed him, and, as testified by its driver, "I felt the back of my truck come down with a thud, and I looked around to the rear part of my truck, and I saw that Mr. Carlsen had just been run over." Testimony was adduced in behalf of plaintiff to the effect that the course taken by the truck was at an angle toward the plaintiff instead of in a direct line to the ferry slip; also that its driver had stated that his truck skidded. On the other hand, the driver, as a witness, testified that the truck did not skid, and, on the contrary, imputed any change in the relative positions of the plaintiff and the moving truck to a movement by plaintiff. He said, "I saw the shoe mark, a side shoe mark like that, of his big toe and the heel where it had slipped out, extending about two feet." It is uncontradicted that the front·end of the truck passed Carlsen and did not interfere in anywise with his movements loading the transfer wagon. This being so, and it appearing that Robertson was driving at an angle toward the boat it is hard to realize that the accident could have happened in any other way than by the rear wheels of the truck skidding to the north, or Carlsen slipping backward (to the south), as, obviously, if the truck continued in the course testified to, the rear wheels would be in a more southerly position than those in front.

[1] In this connection it might be well to consider the contention of the respondent, made in support of the action of the trial court in granting his motion for a new trial, that the instruction to the jury on the doctrine of the "last clear chance" was prejudicial error.

The instruction complained of was to the effect that even if the plaintiff was negligent, ''still, if you find that the collision referred to in the testimony might have been prevented by the use of ordinary care upon the part of Robertson, and if you find that Robertson did not exercise such care, but carelessly caused the collision to occur, then your verdict should be for the plaintiff and against the defendant herein. The principle applicable here is that even if you find that the plaintiff was negligent on the occasion in question, still if Robertson in the exercise of ordinary care had the last clear chance to avoid the collision, but did not avail himself of that chance, then such negligence of the plaintiff would not excuse the defendant.'' Respondent claims that this instruction entirely deprived the defendant of his defense of contributory negligence, and fails to include elements essential to the application of the doctrine it attempts to define.

While this instruction, as one dealing with the situation of a person having the last clear chance to avoid an unintentional injury to another, is far from satisfactory—the first part of it being correct only if entirely subordinated to the later explanatory language—the principal cause for criticism on the part of the respondent is, we think, that the state of the evidence did not justify the giving of it; and being given, the jury was apt to conclude from it that any negligence on the part of the defendant would warrant a verdict against him.

In the instant case it appears from the testimony that Robertson, the driver of the truck, was shielded by a cab; that the head end, including the front wheels, had passed Carlsen, and, according to Robertson's version of the accident, the first he knew that anything was wrong was by feeling a thud. Since the front wheels of the truck passed Carlsen without injuring him, there was no ground for apprehending that the rear wheels would not do likewise. The peril, therefore, from which the plaintiff suffered, namely, being struck by the rear wheels of the truck, was not one which can properly be said to have been apparent to its driver. [2] To charge a person, upon the doctrine of last clear chance, with responsibility for injuring another whose own negligence proximately contributes to such injury, a knowledge of the impending danger is essen-

tial. In the case of *Wallis* v. *Southern Pac. Co.*, 184 Cal. 662 [15 A. L. R. 117, 195 Pac. 408], it was said that "the defendant must not only be aware of the danger in time to avert it, but must also know or have reason to believe that the plaintiff is oblivious of the danger, and is in a position where he cannot extricate himself from it," citing *Arnold* v. *San Francisco O. T. Rys.*, 175 Cal. 1 [164 Pac. 798]; *Basham* v. *Southern Pac. Co.*, 176 Cal. 320 [168 Pac. 359]; *Young* v. *Southern Pac. Co.*, 182 Cal. 369 [190 Pac. 36].

The case of *Wallis* v. *Southern Pac. Co.*, *supra* (184 Cal. 672 [15 A. L. R. 117, 195 Pac. 408]), holds that if there is not sufficient evidence to justify submitting an instruction on the last clear chance to the jury, it is reversible error.

In a later case (*Read* v. *Pacific Elec. Ry. Co.*, 185 Cal. 520 [197 Pac. 791]), where a motion for a new trial was granted by the trial court without specifying any particular ground as the basis upon which it was made, the court stated the rule to be, in substance, that "although it appears that the contributory negligence of the decedent was one of the proximate causes of his death, yet if the defendant's agents having charge of the instrumentality which caused his death perceived that the decedent, by his own negligence, had placed himself in a position of peril from which he probably could not escape, and after perceiving his perilous position failed to exercise ordinary care and prudence to avoid injuring the decedent . . . the plaintiff could recover."

[3] Respondent makes the claim also that the court's instruction to the jury on the question of degree of care required of plaintiff was erroneous. The instruction complained of reads as follows: "I charge you that the rights of a person whose duties require him to be in places used by vehicles, with respect to such vehicles, cannot be determined by the same rules applicable to pedestrians who have no occupation requiring their presence in such places: not that such person is bound to exercise any less care, but because the care to be exercised must be determined from a different standpoint. In such cases his care or want of care is a fact to be determined from all the circumstances surrounding him at the time; but he is not called upon to exer-

cise the same degree of diligence in avoiding accidents as pedestrians or others who use the place merely as a medium of locomotion; and such a person is not bound to neglect his work in order to avoid injury due to the want of ordinary care on the part of operators of vehicles. If, therefore, you find from the evidence before you that Mr. Carlsen, the plaintiff in this action, was a person whose duties required him to be in places used by vehicles, then I charge you that the rules which I have just referred to would be applicable to him, and that you should weigh and consider the same in arriving at your verdict in this cause.''

The evident effect of this instruction was to give to the party injured the benefit of the well-settled rule that a person compelled by the nature of his work to be at a particular place is to be held free from negligence. Appellant insists that the instant case is not the same as that of a pedestrian, and that he should not be called upon to exercise the same diligence to avoid accidents as pedestrians or others who use the streets merely as a medium of passage. To support this view he cites *King* v. *Green,* 7 Cal. App. 473 [94 Pac. 777].

We are of the opinion that the rule does not extend to a person in the situation of the appellant, and that the case cited is against his contention. Carlsen was not forced to work in that particular spot; and the placing of responsibility for an injury to a person working alongside a driveway, when said person is not compelled to be there, should be a matter for the jury to decide by applying the ordinary rule as to negligence. As was said in the case last cited, ''Negligence is a comparative and not a positive term, and its use is relative whether applied to the negligence of the defendant or that of the plaintiff. For this reason in most cases it becomes a question of fact for the jury to determine who was negligent under the circumstances of the case. . . . It was for the jury to determine what would have been the conduct of a person of ordinary prudence under the circumstances of the case, as well as to determine whether or not the facts showed negligence.''

Under these circumstances we do not feel that the rule should be extended to include persons working in a hazardous position, as in this case, with the permission of the owner of a public place, such as railroad stations and the

like, and not forced to remain in a particular place as a matter of duty.

[4] The third point suggested by the respondent as a proper ground for the order of the court appealed from is the instruction by the court on the doctrine of *res ipsa loquitur.* The court gave to the jury the meaning of the Latin phrase and the definition as follows: "When a thing which causes injury is shown to be under the management of defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."

The respondent's contention in this regard must be sustained. The facts of this case were not, we think, such as to make applicable the doctrine of *res ipsa loquitur,* the effect of which is to lighten the burden of proof resting upon the plaintiff by permitting the jury to indulge in a presumption that the defendant was negligent. That presumption only arises, as was stated in the case of *Tower* v. *Humboldt Transit Co.,* 176 Cal. 602 [169 Pac. 227], "where the occurrence is such as ordinarily does not happen without negligence on the part of the party charged, as, for example, in the case of the explosion of a boiler (*Posey* v. *Scoville,* 10 Fed. 140), or of a powder-mill (*Judson* v. *Giant Powder Co.,* 107 Cal. 549 [48 Am. St. Rep. 146, 29 L. R. A. 718, 40 Pac. 1020]), or the fall of a workman's tool from a building upon a workman on the street (*Dixon* v. *Pluns,* 98 Cal. 384 [35 Am. St. Rep. 180, 20 L. R. A. 698, 33 Pac. 268])." It does not apply where there is direct evidence of the cause, or where the facts are such that an inference that the mishap was due to a cause other than the defendant's negligence could be as reasonably drawn as that it was due to his negligence (29 Cyc. 624). It was held in *Tower* v. *Humboldt Transit Co., supra,* that it should not be applied to a collision between a street-car and a pedestrian; and while the plaintiff at the time of his injury was not a pedestrian his situation was similar. He had taken a position so close to passing vehicles that a very slight movement on his part would bring him in contact with them. And the fact that the front wheel of the defendant's truck had passed the plaintiff without coming in contact with him

makes the case very similar to that of a collision between a vehicle and a pedestrian, since it increases the probability that the contact was due to a movement on the part of the person injured. The burden was on the plaintiff to show that his injury was occasioned by the defendant's negligence. This instruction permitted the jury to find against the defendant upon mere proof of the injury, and must therefore be regarded as erroneous and prejudicial.

[5] Much is said in the briefs on both sides with regard to the necessary parties to the action. It appears that suit was brought in the name of the plaintiff alone, although he had received compensation from his employer. The accident happened November 6, 1917. While the Workmen's Compensation Act was amended in 1917 the amendment did not become effective until January 1, 1918 (Stats. 1917, p. 831). Consequently the action should have been controlled by the provisions of section 31 of the act as it stood prior to such amendment (Stats. 1913, p. 295). Under that section as it read at that time the making of a lawful claim for compensation operated as an assignment to the employer of any right to recover damages which the injured employee or his personal representatives or other person had against any other party for injury or death. Any excess recovered was held for the benefit of the injured employee or other person entitled. The section also prohibited the putting in evidence in any action brought of any testimony relative to the amount of compensation paid. Nevertheless, during the course of the trial it was brought out that plaintiff had received compensation and medical services, and the court gave an instruction to the effect that a lien was granted to those paying the compensation upon any judgment plaintiff might recover. Obviously this took the provisions of the act as amended in 1917 into consideration rather than the provisions in effect at the time of the injury. Inasmuch as the case will have to be retried, these matters can be given due consideration by the litigants and the trial court.

The point is also raised as to the right of the plaintiff to sue alone and not make his employer or insurer parties plaintiff or defendant. *Stackpole* v. *Pacific Gas & Elec. Co.*, 181 Cal. 700 [186 Pac. 354], is on all-fours with the present case. It was there held that the injured party

could not sue directly if suitable objection were made, for the reason that the employer and insurer were *necessary* parties (Italics ours). The plaintiff could have maintained the action jointly with the employer or insurance carrier; or, if they were not willing, he could have sued alone and joined them as defendants (*Stackpole* v. *Pacific Gas & Elec. Co., supra*). This condition is changed by the 1917 amendment, but such amendment has no bearing here.

[6] While the order of the court granting a new trial does not specify the particular ground thereof, the error of the court in giving the instructions adverted to may well have appeared to it to constitute a sufficient ground for such order; and if so, its action will not be disturbed by this court in view of the well-settled rule that the granting or refusing of a new trial are matters largely within the discretion of the trial court, and that it is only when this discretion has been abused that an appellate court will reverse the order (*Merralls* v. *Southern Pac. Co.,* 182 Cal. 19, 22 [186 Pac. 778]).

For the reasons given the order is affirmed.

Tyler, P. J., and Knight, J., *pro tem.,* concurred.