MILES KELLY, ADMINISTRATOR, APPELLEE, V. HELEN GAGNON ET AL., APPELLANTS.

FILED APRIL 17, 1931. No. 27610.

*Chambers & Holland* and *Reavis & Reavis,* for appellants.

*John C. Mullen, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

PAINE, J.

This is an action for damages brought by Miles Kelly, administrator of the estate of John Gagnon, deceased, appellee, against three adult children of the deceased, Helen Gagnon, Clara Gagnon, and Joe Gagnon, appellants. The petition alleged that the action was brought for the benefit of Ella Gagnon, the widow of the deceased, and John Gagnon, an incompetent son of deceased, and charged that the daughter, Helen Gagnon, invited her father, now deceased, to take a trip in her automobile with her as her guest. While so riding in South Dakota one of the tires was punctured by a nail and the car overturned, and from injuries received at said time the father, John Gagnon, died the next day.

The petition, as a basis for the recovery of $10,000 damages, set out six specific acts of negligence on the part of Helen Gagnon, as follows: (1) Her failure to have the automobile in proper working order at the time she invited the deceased to ride with her, in that the tires of the said automobile were out of repair; (2) in driving the automobile when she knew that the said tires were liable to burst; (3) by inviting her father to take a ride in the said automobile when she knew she could not control it in the event one of the tires became punctured; (4) in driving the said automobile at an excessive and dangerous rate of speed when she knew she could not control it in the event one of the tires burst; (5) in driving the said automobile at a rate of speed which she knew would endanger the life of her father; (6) in grossly, negligently and carelessly applying the brakes of the said automobile, bringing it to a violent stop and causing it to overturn.

The answer of the appellants denied all of the allega-

tions of negligence, and pleaded that the cause of the accident was the sudden and unforeseen puncturing of the automobile tire by the spike, which caused the air to be suddenly expelled, and denies that the defendants or either of them were guilty of any negligence which contributed in any way to the accident.

Trial was had to a jury, and a verdict was returned, signed by ten jurors, for $2,000, and motion for a new trial was overruled.

Two of the errors relied on for a reversal of the case are, first, that no negligence was proved on the part of Helen Gagnon, and, second, that the court should have sustained the defendants' motion for a directed verdict at the close of the plaintiff's testimony.

The facts, as shown by a careful reading of the bill of exceptions, disclose that on September 13, 1929, Helen Gagnon and her sister Clara, who were self-supporting women, living at home, purchased this Studebaker sedan of a local dealer in Falls City, Nebraska, trading an old car in on it and paying the balance in cash; that during the following month the car was driven almost daily, and then Helen Gagnon invited her father, mother, and youngest brother, John, to take a trip to South Dakota with her as her guests. The accident happened on October 12, 1929, about two miles from Gregory, South Dakota, when they were traveling on a good country road, with no other cars in the immediate vicinity, and driving about 30 miles an hour. A 5-inch, 16-penny spike penetrated the tire on the left rear wheel. The car swayed from side to side, and the driver, Helen Gagnon, applied the brakes and the car tipped over, her father receiving a cut on the head and an injury to his spine, from which injury he passed away near Fremont, Nebraska, the following day as they were taking him to an Omaha hospital. The deceased was 81 years of age, a lawyer, who had been in good health and earning around $2,500 a year. His wife and the youngest brother, John, who were in the car at the time of the accident, were both entirely dependent upon the deceased for support. John Gagnon, above referred to, was 26

years of age, but unable to do any work at all, having been operated upon 23 times for brain abscesses.

During the trial a stipulation was made a part of the record that the expectancy of the deceased was from 4.78 years by the American table to 5.51 years by the Carlisle table, and that the speed law of the state of South Dakota allows 40 miles an hour in driving automobiles upon roads such as the one where the accident occurred.

Shortly after the case was filed the defendants' attorneys, Chambers & Holland, took the evidence of their client, Helen Gagnon, and also of the garageman and the mechanic in South Dakota, by deposition.

They complain in their brief that, when the case was tried, Helen Gagnon was the first witness called by plaintiff, and in the brief claim they are preparing their case without a client. When the plaintiff closed his evidence, the defendants moved for an instructed verdict, and, upon this motion being overruled, defense rested without introducing any evidence, as the depositions they had taken in South Dakota were offered and used by the plaintiff.

1. The first four specific acts of negligence charged in the petition, as set out herein, relate to driving the car with tires not new but somewhat worn.

The evidence on the condition of the tires was given by the defendant Helen Gagnon, as follows: "Q. What was the condition of the tires? A. Well, they were worn; in places they were worn clear through to the fabric. * * * Q. Had you given any considerable thought as to whether these tires might blow out on the road? A. Well, I really didn't expect them to blow out; I thought they would get us there and bring us home again. Q. Well, they didn't blow out, did they? A. Well, they didn't make any noise; no. Q. The thing that caused this accident was the spike entering the tire, wasn't it? A. Yes, sir. Q. So it wasn't a blow-out or a defect as far as you know in this left rear tire that caused that spike to enter? A. No, sir." "Q. About how large a spike was it? A. Oh, it looked to me to be almost as big around as my little finger. Q. And about how long? A. Well, it was at least an inch and a

half, that was bent over on the outside of the tire. * * * Q. A spike large enough to enter almost any tire if it got in the right way?  A. I think so. * * * Q. At that time after this spike entered the tire, you did think though that the best thing to do would be to put on the brakes? A. Yes, sir. * * * Q. And that was your best judgment at the time this accident happened?  A. I thought I had better stop."

John Sully, a mechanic, 42 years of age, gave his evidence by deposition. Having been sent out to bring in the automobile, he found the car upright with the left rear tire down and took it off and put on the spare tire and drove the car into town, and on direct examination testified: "Q. As to the character of the casings as to being worn or otherwise, what would you say as to that?  A. The casings were worn to a certain extent.  Q. Was the part of original roughness on the tread of the casing?  A. Yes.  Q. Does that answer apply to the casing that you removed from the car as well as the other casings on the car?  A. Yes."

It is clear that these tires were in fair, second-hand condition, not all of the tread being worn smooth.

The owner of an automobile who invites another to ride with him as a guest, the invitation being accepted, does not thereby become the insurer of the safety of the guest, but is bound to use ordinary care not to increase the danger to the guest. See *Bauer v. Griess,* 105 Neb. 381.

"Where the owner of a private motor vehicle gratuitously carries another person therein as a passenger, he owes such passenger the duty of exercising ordinary care in the operation of the vehicle, and will be liable in damages if his failure to exercise such care is the proximate cause of injury to his passenger." *Jessup v. Davis,* 115 Neb. 1.

Nebraska in these two cases has taken its stand with the great majority of states which hold that the owner and driver of an automobile owes an invited guest the duty of exercising reasonable care in its operation so as not to unreasonably expose him to danger and injury by

increasing the hazard of travel. Many authorities supporting this view being given in the note in 61 A. L. R. 1252, and the minority rule being followed by Massachusetts, Washington, Georgia, and Pennsylvania.

The fifth act of negligence charged in the petition is that the defendant was driving the car at a rate of speed which she knew would endanger the life of her father. There is no dispute in the evidence that her speed was 30 miles an hour and that the legal speed in South Dakota was 40 miles an hour. There were no cars in sight and the road was level, and no negligence was shown in her manner of driving.

2. The sixth and last act of negligence charged is that, when the tire was punctured, the driver stopped the car by grossly, negligently and carelessly applying the brake as soon as the rear of the car began to sway, thereby bringing it to a violent stop. Let us examine the evidence on that point. Helen Gagnon testified as follows: "Q. Was that a considerable sway? A. Well, I thought so. Q. Enough so that you knew that something had happened, didn't you? A. Yes, sir. Q. Did it startle you? A. Oh, I just put the brake on, that was the first thing I thought of."

A fairly careful search of digests and through the several texts on automobiles, and also under the subject of negligence, discloses no reported cases where claim was made that the owner of a car was guilty of negligence for driving with the tires somewhat worn.

The only case found indexed under "Tires" is *Regan v. Cummings*, 228. Mass. 414, where the driver heard the air escaping from a punctured tire and was held negligent for not pushing on the foot brake and stopping the car, as he might have done almost instantly rather than to let the car run at least 20 feet, when a casing locking ring came off the rim when the tire was partially deflated, rolled upon a sidewalk and injured a pedestrian. In this one reported case the driver was at fault in not applying the **brakes.**

Now, on the contrary, in this case at bar it is argued that a highly skilled driver should not apply the brakes when the car sways from a tire going down.

A father who had frequently accepted an invitation to ride with his adult daughter in her automobile accepted whatever risk attended the degree of proficiency as a driver which the daughter possessed.

3. Conduct which would otherwise be negligence cannot be excused on the ground that the actor made a mistake of judgment, unless the judgment exercised was that which an ordinarily careful and prudent man would have exercised under the same circumstances. *Reliable Auto Renting Co. v. Brooklyn City R. Co.*, 192 N. Y. Supp. 803.

"The mere fact that one errs in judgment is not conclusive proof that he did not act as a reasonably prudent person would have acted under like circumstances." *Stiles v. Corbett*, 136 Wash. 670.

The owner and driver of an automobile assumes a position of responsibility when she invites guests to accompany her. She owes to such guests a degree of care for their safety which should not be treated too lightly. She must be more careful in situations of greater danger and exercise at all times that degree of ordinary care which the great mass of mankind under the same or similar circumstances would exercise.

4. "Guests who accept the hospitality of the driver of an automobile accept whatever risk attends the degree of proficiency of such driver and his usual and customary habits of driving with which they are familiar" is a rule set out in *Olson v. Hermansen* (196 Wis. 614) 61 A. L. R. 1243, with notes, and is approved by this court. The driver and owner of an automobile, who acted in good faith and in accordance with her best skill in an emergency created by a tire going suddenly flat when punctured by a large nail, cannot be held liable for the death of her father, who was riding as her guest, on the theory that she failed to exercise ordinary care in the management of the car because she applied the brakes, which may have contributed to its overturning.

"When a person without his fault is placed in a situation of danger, he is not to be held to the exercise of the same care and circumspection that prudent persons would exercise where no danger is present." *Frish v. Swift & Co.,* 97 Neb. 707, quoting from *Pennsylvania R. Co. v. Snyder,* 55 Ohio St. 342. See *Harris v. Parks,* 58 Utah, 42.

"In the event the driver of an automobile is suddenly met with an emergency which naturally would overpower the judgment of a reasonably prudent and careful driver, so that momentarily he is thereby rendered incapable of deliberate and intelligent action, and as a result injures a third person, the driver is not negligent, provided he has used due care to avoid meeting such an emergency, and, after it arises, he uses such care as a reasonably prudent and capable driver of an automobile would use under the unusual circumstances." *Wilson v. Roach,* 101 Okla. 30.

"When two alternatives are presented to a traveler upon the highway as modes of escape from collision with an approaching traveler, either of which might fairly be chosen by an intelligent and prudent person, the law will not hold him guilty of negligence in taking either." *Skene v. Graham,* 114 Me. 229.

5. It is only when the facts are not in controversy, or the evidence is of such a character as but one rational inference can be drawn therefrom, that the court is warranted in determining the question of negligence as a matter of law. *Chicago, B. & Q. R. Co. v. Winfrey,* 67 Neb. 13; *De Griselles v. Gans,* 116 Neb. 835; *Long v. Omaha & C. B. Street R. Co.,* 108 Neb. 342.

"It is the settled rule in this state that where different minds may draw different inferences from the same state of facts as to whether such facts establish negligence, it is a proper question for the jury and not for the court. But that rule is subject to the qualification that the inference of negligence must be a reasonable one. Where it is impossible to infer negligence from the established facts without reasoning irrationally and contrary to common sense and the experience of average men, it is not a ques-

tion for the jury, and the court should direct a verdict for the defendant." *Chicago, B. & Q. R. Co. v. Landauer,* 36 Neb. 642.

"Where the question of negligence is presented by the pleadings, and there is no conflict in the evidence, and but one reasonable inference can be drawn from the facts, the question is for the court." *Olson v. Nebraska Telephone Co.,* 83 Neb. 735. See *Brady v. Chicago, St. P., M. & O. R. Co.,* 59 Neb. 233.

6. Appellee objects to the fact that the transcript as prepared by the appellants does not include the instructions given by the court, and claims the verdict would have been larger if the district judge had not given an instruction upon contributory negligence, which was not alleged in the answer. The court cannot consider this question in the condition of the record, and also calls attention to the fact that the reporter did not sign his certificate at the close of the bill of exceptions, although it is certified to by the district judge.

In this case, at a time when an automobile was being carefully driven on an open country road at less than the legal speed, a large spike, sufficient in size to penetrate any tire if struck, penetrated a rear tire, causing the car to sway and upset, which brought about the death of an elderly gentleman. It is a general rule that the mere fact that an accident occurs raises no presumption of negligence on the part of either of the parties to it. *Tsiampras v. Union P. R. Co.,* 104 Neb. 205. Was this unfortunate death caused by an accident? What is an accident? Under the workmen's compensation act we have had many definitions of accident in various states. Under many suits brought under accident policies the courts have passed on the question in nearly every state. The Iowa court has said: "An accident is any casualty which could not be prevented by ordinary care and diligence." *Sprecher v. Ensminger,* 167 Ia. 118.

In *Stasmos v. State Industrial Commission,* 80 Okla. 221, 15 A. L. R. 576, is found this statement: "Accident in the legal signification is difficult to define; it is not a

technical legal term with a clearly defined meaning, and is used in more senses than one. * * * The word denotes * * * an event which proceeds from an unknown cause or is an unusual effect of a known cause, and therefore unexpected."

7. The defendants at the close of plaintiff's evidence made the following motion: "Mr. Holland: The defendants Helen Gagnon, Joe Gagnon and Clara Gagnon move that the court direct a verdict in their favor and against the plaintiff for the reason that the evidence is insufficient to constitute a cause of action against one, either or all of the defendants, and in favor of the plaintiff, and for the further reason that the evidence is insufficient to show that Helen Gagnon, the driver of the automobile, was negligent towards the plaintiff in any degree, and for the further reason that the evidence is conclusive that the defendant Helen Gagnon did everything possible that she could have under the circumstances to avoid an accident after the spike entered the tire of her automobile. Motion overruled. Defendants except. Defendants rest."

It is the opinion of all of the members of this court that, for reasons stated in this opinion, this motion should have been sustained, and for the error in overruling the same the judgment is

REVERSED.