[Civ. No. 14811. First Dist., Div. Two. Jan. 4, 1952.]

DANIEL MEYERS, Respondent, v. G. W. THOMAS DRAYAGE AND RIGGING COMPANY (a Corporation), Appellant.

Partridge & O'Connell for Appellant.

Jack Flinn for Respondent.

JONES, J. pro tem.—The appeal here is from a $19,000 judgment for plaintiff in a personal injury action.

Plaintiff was injured on December 8, 1948, while working in a water pipe line trench when a load of asphalt chunks and other materials fell from the "clamshell" of a power shovel and upon him. The power shovel was being operated by the defendant Schroff, an employee of defendant Thomas Drayage and Rigging Company, a corporation.

Plaintiff worked as a foreman for a construction firm which, on the date of the accident, was engaged in digging a pipe line ditch 6 to 8 feet wide and 6 to 7 feet deep along Highway 101. The ditch was to contain a pipe line bringing water from Crystal Springs Lake to San Francisco. Plaintiff's employer had hired from the defendant corporation a truck crane with a power shovel for the excavation work. The hire included two of the defendant corporation's employees, the defendant Schroff to operate the crane and a Mario Colombo to oil it and drive the truck. The crane had a 45-foot boom which extended in front of the operator's cab. Both the cab and boom were atop a revolvable platform on the truck bed which permitted the boom to be moved in any direction. The "clamshell" which was suspended by cables from the top of the boom was 28 inches wide, had metal jaws with three 6-inch teeth on each side and had a load capacity of ⅜ of a yard. The crane was operated through a system of coordinating pedals, levers, brakes, cables, lines, chains and pulleys, and dirt and other material within the range of the crane were dug, scooped out and carried to any desired place or position and there dumped. The surface of the roadway where the ditch was being dug was of asphalt macadam which had to. be broken by a jackhammer. After the surface of the roadway had been broken, the crane would remove the macadam to the required depth and width, depositing the materials removed therefrom in a pile away from the ditch.

After the lunch period on December 8, 1948, plaintiff and another employee named Williams went down into the ditch where excavation had been completed to do some required

shoring work. This was to the south of the crane as work was progressing in a northerly direction. There is some conflict in the evidence as to the length of time Meyers, the plaintiff, had been in the ditch and the number of loads the crane had removed when the accident occurred. The figure is variously given as from 12 to 15 loads. The accident occurred when a load of the broken macadam spilled from the "clamshell" onto plaintiff some time after he entered the ditch. Neither plaintiff nor Schroff could see the other while plaintiff was in the ditch. The loads were being removed from the head of the ditch near the surface and were in the plain view of the plaintiff. No adjustment, change or repair was made in or to the machinery after the accident and it continued to operate throughout the balance of the day.

Mario Colombo who was oiler for the rig and whose duty it was to spot the bucket in the ditch when below the view of the operator testified that shortly before the accident happened: "Before I left and went down the line, I asked Meyers not to get in that ditch over there . . . and I asked Mr. Meyers about the bucket, and he says, 'Don't worry about me. I know what I am doing. You go and take care of your rig.' " This witness also testified that "After lunch, every time the bucket came around, they would go out further, so the bucket wouldn't have a chance to drop anything on them, so they wouldn't be in the way of the bucket." When the bucket-load of macadam which fell on Meyers was hoisted he and Williams ran first up the ditch to the north and then back to the south. The load fell on him as he was proceeding southerly in the ditch.

The jury returned a verdict for plaintiff, judgment was entered accordingly and the defendant corporation filed this appeal.

Appellant urges that the judgment should be reversed for the reason that the jury was misdirected to its prejudice. In this connection it first urges that the court erred in instructing the jury on res ipsa loquitur because the accident is not the type which, in the light of common experience, was more likely than not the result of defendant's negligence. Appellant argues that the type of accident here involved was more than likely to happen to one in an exposed position in the ordinary course of events, because of "the strong probability that when a load of materials such as blacktop macadam was picked up some of the material would become wedged or jammed between the jaws or lips of the clamshell thereby

preventing the clamshell from closing and thereby causing the load to spill out as it was being carried." The uncontradicted testimony is that a piece of asphalt was wedged in the jaws of the "clamshell" and prevented its closing while carrying the load which dropped on the plaintiff. It is also the uncontradicted testimony of several witnesses including plaintiff himself that it is not unusual for cranes of this type to drop loads when the material being moved contains large rocks or chunks of asphalt which might become wedged in the teeth of the "clamshell." Respondent replies to this argument by asserting that the evidence showed the "clamshell" opened all the way over the head of the plaintiff and the whole load spilled out on top of him. In this respect appellant agrees and correctly so that there was evidence that the bucket opened all the way, but also much evidence to the effect that the load slipped through the gap of 8 to 10 inches caused by the wedged chunk of asphalt. It is also testified to that this chunk disintegrated when the bucket was in mid-air and that when it broke up the whole load emptied falling on Meyers.

The first instruction on the subject of res ipsa loquitur given by the trial court reads:

"Now, from the happening of the accident involved in this case as established by the evidence there arises an inference that a proximate cause of the occurrence was some negligent conduct on the part of the defendant. That inference is a form of evidence, and if there is none other tending to overthrow it, or if the inference predominates over contradictory evidence, it warrants a verdict for the plaintiff. Therefore you should weigh any evidence tending to overcome that inference, bearing in mind that it is incumbent upon the defendant to rebut the inference by showing that they did in fact exercise ordinary care and diligence or that the accident occurred without being proximately caused by any failure of duty on their part."

The court then instructed that the foregoing instruction is based on a special doctrine of law which may be applied only under special circumstances. These circumstances were recited to be:

"First, the fact that some certain instrumentality by which injury to the plaintiff was proximately caused was in the possession and under the exclusive control of the defendant at the time of the cause of the injury was set in motion, and it appearing on the face of the event that the injury was caused by some act or omission incident to defendant's management.

"Second, the fact that the accident was one of such a nature as does not happen in the ordinary course of things if those who have control of the instrumentality use ordinary care.

"Third, the fact that the circumstances surrounding the causing of the accident were such that the plaintiff is not in a position to know what specific conduct was the cause, whereas the one in charge of the instrumentality may reasonably be expected to know and to be able to explain the precise cause of the accident."

These instructions substantially state the doctrine of res ipsa loquitur. ■ The difficulty is, however, that the facts of the case do not permit the application of the doctrine. The circumstances surrounding the happening of the accident are such that reasonable minds might well conclude that the cause thereof was some event over which the defendant had absolutely no control. As is said in *Carlsen* v. *Diehl,* 57 Cal. App. 731, 737 [208 P. 150] : "It does not apply where there is direct evidence of the cause, or where the facts are such that an inference that the mishap was due to a cause other than the defendant's negligence could be as reasonably drawn as that it was due to his negligence (29 Cyc. 624)." The plaintiff in the Carlsen case had taken a position so close to passing vehicles that a very slight movement on his part would have brought him in contact with them. The court there said that the position of the plaintiff increased the probability that the contact was due to a movement on his part. Here, likewise, the plaintiff took a position where a slight change would have brought him directly under the bucket. It is undisputed that he went into the ditch despite the warning of defendant's employee that he should keep out of it and away from the bucket. The record also discloses that from time to time as the bucket was hoisted the plaintiff and the other workmen would change their positions. This shifting about was obviously for the purpose of avoiding the falling rocks and dirt. The situation here presented shows the plaintiff entering the ditch after a warning by the defendant's agent that it was dangerous to do so, and it is undisputed that he was constantly changing his position out of view of the operator of the power rig. These acts on his part, coupled with the undisputed fact that the machinery was operating normally and that there was nothing wrong with it so increase the probability that the accident was the result of his own actions that the case is completely out of the

scope of res ipsa loquitur. In *Scellars* v. *Universal Service Everywhere,* 68 Cal.App. 252, 256 [228 P. 879], in quoting from *Lucid* v. *E. I. Du Pont etc. Powder Co.,* 199 F. 377 [118 C.C.A. 61, L.R.A. 1917E 182], it is said that "the doctrine is to be applied only when the nature of the accident itself, not only supports the inference of the defendant's negligence, but excludes all others." See, also, *Gritsch* v. *Pickwick Stages System,* 131 Cal.App. 774, 783 [22 P.2d 554], and *Olsen* v. *Whitthorne & Swan,* 203 Cal. 206 at 208 [263 P. 518, 58 A.L.R. 129] where it is said that, "It does not apply 'where an unexplained accident might have been caused by plaintiff's negligence, or been due to one of several causes, for some of which the defendant is not responsible.'" *Biddlecomb* v. *Haydon,* 4 Cal.App.2d 361 [40 P.2d 873], and *Middleton* v. *Post Transportation Co.,* 106 Cal.App.2d 703 [235 P.2d 855], are more recent cases to the same effect. The jury could well have understood, and probably did understand, from the given instructions that the plaintiff was not bound to prove negligence on the part of the defendant but that mere proof of the accident was sufficient to impose on the defendant liability for plaintiff's injury. (*Tower* v. *Humboldt Transit Co.,* 176 Cal. 602 [169 P. 227].) Instructions which permit the jury to find against the defendant upon mere proof of injury under the circumstances here presented must be regarded as prejudicial.

 Instructions were also given with respect to the presumption of due care on the part of the plaintiff, two of which the appellant assigns as error. The first is: "You are instructed that there is a presumption in law that a person takes ordinary care of his own concerns. That is Civil Code, section 1963. You are instructed that a presumption that a person takes ordinary care of his own concerns is a species of evidence and stands against direct evidence to the contrary."

The second reads: "You are instructed that there is a presumption of law in this case that plaintiff Daniel Meyers was exercising ordinary care at the time of the happening of this accident. This presumption is a species of evidence and is only dispelled by clear, satisfactory evidence to the contrary."

The appellant points out that the plaintiff was conscious up to the very instant of the injury and at the trial he testified concerning his own acts and conduct and the events immediately preceding and leading up to the accident as well as producing witnesses who testified to the same effect. The argu-

ment is made that the courts of this state have repeatedly held that it is error for the trial court to instruct on the presumption of due care in a case where the acts and conduct of the plaintiff immediately preceding the injury are fully testified to by the plaintiff or by witnesses called on his behalf. While this is true, such error may not always be prejudicial. Concerning the giving of such an instruction it is said in *Barker* v. *City of Los Angeles,* 57 Cal.App.2d 742, 749 [135 P.2d 573] : ''From apparently conflicting opinions of appellate courts of California, the following rules may be adduced:

''(1) It is error for the trial court to give an instruction such as that set forth above where the evidence introduced by the plaintiff discloses the acts and conduct of the injured party immediately prior to or at the time of the accident (*Speck* v. *Sarver,* 20 Cal.2d 585, 587, 588 [128 P.2d 16] ; *Campbell* v. *City of Los Angeles,* 28 Cal.App.2d 490, 491 [82 P.2d 720].)

''(2) Whether the giving of such an instruction when the evidence of the plaintiff discloses the acts and conduct of the injured party at the time of the accident constitutes *prejudicial error* depends on the circumstances of each case. (*Speck* v. *Sarver, supra.*) ''

In this case the negligence of each of the parties was in issue before the jury and upon these issues of negligence the proof made presented close questions of fact. The second instruction, erroneous though it is under the facts of the case, might under different circumstances be deemed not prejudicial. This, however, cannot be said of the first. By its unequivocal terms the jury were told that the plaintiff was clothed with a presumption of due care, and that this presumption would stand against direct evidence to the contrary. This instruction if followed by the jury would exclude from their consideration any evidence of negligence on the part of the plaintiff and effectively bar the defense of contributory negligence. An instruction which has the effect of withdrawing from the jury a consideration of evidence which is material to an issue is prejudicial. (*Dotson* v. *International Life Ins. Co.,* 89 Cal.App. 653, 657 [265 P. 357].)

There is no way of telling what part of the jury followed the first instruction on the presumption of due care and rejected all direct evidence of negligence on the part of the plaintiff or what jurors followed the second instruction and weighed the presumption against ''clear'' evidence of his negligence. In either case the evidence offered by the defend-

ant of plaintiff's negligence could not, under the admonition of the court, receive that fair consideration to which it was entitled. The prejudicial effect of these instructions is cumulative when taken in connection with that given on the doctrine of res ipsa loquitur.

We are of the opinion that the combined effect of all these erroneous instructions is such as to remove the case from the purview of section 4½ of article VI of the Constitution and compel a reversal of the judgment.

Since the judgment is to be reversed for the reasons stated, the other points made by the appellant need not be here considered.

The judgment is reversed.

Nourse, P. J., and Goodell, J., concurred.