[Civ. No. 5609.   Fourth Dist.   Apr. 15, 1958.]

THELMA O. RAYNER et al., Appellants, v. HENRY
BERMEA RAMIREZ et al., Respondents.

Dermit Long and W. W. McCray for Appellants.

Hansen, McCormick, Barstow & Sheppard, Hollis G. Best and Crowe, Mitchell & Hurlbutt for Respondents.

GRIFFIN, J.—In this action against Henry B. Ramirez, Peter B. Ramirez and Rita B. Ramirez, brought by Thelma O. Rayner, the claimed surviving wife of the deceased Ronald Rayner, and the surviving mother and father, Ruby and Irwin Rayner, a jury returned a verdict for defendants. Plaintiffs appealed from the judgment.

The main contentions on appeal are that the court erroneously instructed the jury, failed to give plaintiffs' proffered instructions and refused to strike certain evidence.

In defendants' answer, after denying negligence on their part, they pleaded contributory negligence on the part of plaintiffs' decedent and that the accident was ''unavoidable.'' At the request of defendants an instruction was given to the effect that in law we recognize what is termed an unavoidable or inevitable accident; that these terms do not mean literally that it was not possible for such an accident to be avoided; and that they simply denote an accident that occurred without having been proximately caused by negligence. This instruction was not referred to in the briefs as being one to which objection was made since, at the time of trial, it was proper under the decision in *Parker* v. *Womack*, 37 Cal.2d 116 [230 P.2d 823]. It is the usual rule that a point is deemed waived and an appellate court will not consider a question not raised at the trial or on a motion for new trial and not referred to in the briefs on appeal particularly where no authority is cited in support of the point. (5 C.J.S. p. 1219, § 1803.) By letter, subsequent to the filing of the briefs, the case of *Butigan* v. *Yellow Cab Company*, 49 Cal.2d 652 [320 P.2d 500], was cited, and in the argument before this court objection was raised as to the propriety of giving such an instruction under the facts of the case. Under the circumstances there appears to be good reason for the failure of plaintiffs to raise the point in their opening brief. We conclude it should be here considered. (*California National Supply Co.* v. *O'Brien*, 51 Cal.App. 606, 612 [197 P. 414].)

Since the rendition of the judgment in the instant case and after all of the briefs on appeal had been filed, the majority of the Supreme Court, in the Butigan case, overruled *Parker* v. *Womack*, *supra*, and held that the so-called defense of unavoidable or inevitable accident has no legitimate place in our pleading (with some possible exceptions), and that it is nothing more than a denial by plaintiff of his negligence, or that his negligence, if any, was a proximate cause of the injury. It appears that at the time of trial and under the Womack decision, *supra*, defendants were entitled to an instruction on an unavoidable and inevitable accident. For all intents and purposes, this was the rule of law existing at the time by which the trial court and the parties were bound, and no one was bound to anticipate that at some subsequent date, after the

filing of all briefs, this rule would be changed. The authorities, even in this state, are not uniform on the question as to the effect of a change of the law during the pendency of an appeal, in relation to the determination and disposition of a cause by the appellate courts. (See 5 C.J.S. p. 1310, § 1841.) The rule in some states is that the law in force at the time the judgment is rendered is ordinarily controlling, and the rule in other jurisdictions is that the appellate court must generally decide and dispose of the case in accordance with the law existing at the time of its own decision. (*Tulare Irr. Dist.* v. *Lindsay-Strathmore Irr. Dist.*, 3 Cal.2d 489 [45 P.2d 972] ; *Collins* v. *Consolidated Water Co.*, 122 Cal.App. 348 [9 P.2d 872] ; *Morris* v. *Board of Education*, 119 Cal.App. 750 [7 P.2d 364, 8 P.2d 502] ; *Lowery* v. *Hallett*, 105 Cal.App. 84 [287 P. 110] ; *Barcelone* v. *Melani*, 156 Cal.App.2d 631 [320 P.2d 203] [Hearing in Supreme Court denied] ; *Brandelius* v. *City & County of San Francisco*, 47 Cal.2d 729 [306 P.2d 432] ; *Parrott* v. *Furesz*, 153 Cal.App.2d 26 [314 P.2d 47] ; *People* v. *Kitchens*, 46 Cal.2d 260 [294 P.2d 17] ; *People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905] ; and *Broderick* v. *Stevenson Consolidated Oil Co.*, 88 Mont. 34 [290 P. 244, 246].)

Assuming that the rule of law announced in the Butigan decision may be considered as applicable to this case, it is not clear from the Butigan decision whether the majority opinion intended to include among the ''unavoidable'' type, such cases as *Graham* v. *Consolidated Motor Transport Co.*, 112 Cal.App. 648 [297 P. 617], where a child ran into a street; *Creamer* v. *Cerrato*, 1 Cal.App.2d 441 [36 P.2d 1094] ; *Jolley* v. *Clemens*, 28 Cal.App.2d 55 [82 P.2d 51], where a horse suddenly appeared on the highway; *Zaferis* v. *Bradley*, 28 Cal.App.2d 188 [82 P.2d 70] (driver's foot became wedged between pedals) ; *Smith* v. *Harger*, 84 Cal.App.2d 361 [191 P.2d 25] (small boy pushing on back of dump truck) ; *Alward* v. *Paola*, 79 Cal.App.2d 1 [179 P.2d 5] ; *Merry* v. *Knudsen Creamery Co.*, 94 Cal.App.2d 715 [211 P.2d 905] (brake failure) ; *La Porte* v. *Houston*, 33 Cal.2d 167 [199 P.2d 665] ; *Barber* v. *Gordon*, 111 Cal.App. 279 [295 P. 377] ; *Doggett* v. *Lacey*, 121 Cal. App. 395 [9 P.2d 257] (cases of defective automobile mechanism not due to driver's negligence) ; *Yates* v. *J. H. Krumlinde & Co.*, 22 Cal.App.2d 387 [71 P.2d 298] (gust of wind caused gate to slam shut) ; *Hester* v. *Hall*, 17 Ala.App. 25 [81 So. 361] (hogs darting in front of a car) ; *Rainwater* v. *Boatright*, (La.App.) 61 So.2d 212 (child darted in front of a car) ; *Holland* v. *Bartch*, 120 Ind. 46 [22 N.E. 83, 16 Am.St.

Rep. 307] (boy on bicycle who frightens horse) ; and *Kelly* v. *Gagnon*, 121 Neb. 113 [236 N.W. 160] (automobile driver whose tire blows out). Other such cases could be listed at great length. (65 C.J.S. pp. 430-433; Prosser on Torts, 2d Ed. p. 167.) Suffice it to say that in many jurisdictions the doctrine of unavoidable accident is recognized in such type of cases. This type was considered in *Butigan* v. *Yellow Cab Co.*,* (Cal. App.) 310 P.2d 132, when that case was before the District Court of Appeal. It was there said:

"Under the true concept of the rule, an unforeseeable cause cannot exonerate a party charged with negligence unless it is shown to have been the sole proximate cause of the accident, and there is no justification for giving an unavoidable accident instruction unless the jury could reasonably conclude that the sole proximate cause of the accident was one that was beyond the reasonable anticipation and control of the parties."

After a hearing was granted, in a majority opinion by the Supreme Court, it was held that under the facts of that case an instruction on unavoidable accident was not justified and accordingly it was error to give it. The Supreme Court did not directly overrule the holdings in the cases above cited but did remark that there were situations where it might be necessary to explain the meaning of the words "unavoidable accident," for example, where a defendant is charged with a violation of section 602 of the Vehicle Code, and that "in the absence of a special situation of the type discussed above" the use of such an instruction "should be disapproved." If this decision is to be construed that the giving of such an instruction is error in all cases except those where the statute provides for such a defense, then it was error to give the instruction above mentioned. If the term "special situation of the type discussed" included such situations as formerly approved in the cases cited, as being a type where the facts allowed an instruction on "unavoidable accident" then the facts of the instant case would be within that rule and it would not be error to give such an instruction. As to this, it would appear to us some clarification would be beneficial to trial and appellate courts for their future guidance.

■ Assuming, without deciding, it was error to give it, the question then remains whether or not it was prejudicial. From the facts hereafter related and the surrounding circum-

---

*A hearing was granted by the Supreme Court on June 19, 1957. The final opinion of that court is reported in 49 Cal.2d 652 [320 P.2d 500].

stances, we conclude that if the giving of such an instruction was error, it was not prejudicial error requiring a reversal of the judgment. It does not affirmatively appear that the judgment was rendered in favor of the defendants because of the giving of this instruction but was mainly due to the actions and conduct of the plaintiff wife in reference to her testimony and her claimed damages.

The factual background, gleaned from the record, shows that on August 18, 1954, at about 6 p.m. in the daylight, Ronald Rayner was driving an Oldsmobile automobile in a westerly direction on Nevada Avenue on an oiled country roadway about 21 feet wide which ran between Coalinga and Lemoore. Defendant Henry Ramirez was driving a 1953 Chevrolet flat-bed truck with 3 or 4-foot side boards in a general easterly direction. He was towing a similar 1949 Chevrolet flat-bed truck being steered by defendant Peter Ramirez. This latter truck was registered in the name of defendant Rita Ramirez, the mother, who was not present at the time of the accident. Henry and his brother Peter were jointly engaged in farming enterprises. They were moving their equipment by means of these two trucks. The engine of the 1949 Chevrolet ceased to function. A 3/7 inch chain about 15 to 18 feet long, with a hook on each end, was fastened to the bumper of the 1949 Chevrolet and to the trailer hitch of the 1953 Chevrolet in some fashion, and the distance between the two trucks was then from 8 to 12 feet. A smaller 3/8 inch chain was attached to the hitch and was hanging down for a distance of about 8 inches. There is a conflict in the evidence as to whether or not the smaller chain was attached to the longer chain. Near Coalinga the 1953 Chevrolet was towed onto the highway and defendants proceeded easterly in this manner for about 15 miles, traveling about 20 to 30 miles per hour. Carlos Ramirez was seated next to the driver in the towing truck. Their testimony as to what happened at the time of the accident is in some conflict. Near this place, bordered on the south, to some extent, is a row of sparsely planted trees and a house or two. Leading from those houses is a narrow road or lane which enters the highway forming a ''T'' intersection. A boy was riding his bicycle northerly on this lane and came on the highway or shoulder and turned suddenly around and proceeded southerly back down the lane.

Henry Ramirez testified that he was proceeding easterly in the south lane of the highway and when he first saw the boy

on the bicycle the boy "was on the shoulder . . . right there on the pavement" and to prevent colliding with him, he swerved the 1953 Chevrolet truck to his left for a distance of two or three feet and then back to his right; that he did not see the Oldsmobile approaching from the east on the north half of the highway; that immediately thereafter the Oldsmobile struck the rear Chevrolet truck on its right side after it had veered over into and partially crossed the north half of said roadway; that the tow-chain broke about the time of the collision; that a side gasoline tank on the right-hand side of the rear truck was punctured and exploded; that a stream of fire engulfed both the truck and Oldsmobile and Ronald was burned to death.

Peter Ramirez testified he saw the boy on the bicycle when the boy turned on the shoulder about 5 feet from the highway and went back down the lane; that the towing truck turned sharply to its left and he followed it and when he was first able to see the Rayner car it was on its own side of the road about 10 feet from him and it appeared to him that after the Oldsmobile cleared the towing truck the driver attempted to pass between it and the towed truck.

An officer who investigated the accident testified the towed truck was on the north half of the highway when he arrived and he determined that the point of impact with the Oldsmobile was three to four feet south of the north edge of the highway; that a long chain was on the ground and one end was still attached to the front bumper and the other end was under the towed truck leading back to its rear end; that there was still a part of that chain attached to the trailer hitch; and that no part of the towing truck was damaged.

A 17-year-old boy who was standing near one of the houses to the south about 25 yards away testified the boy on the bicycle did not reach the shoulder of the highway but turned back about 5 yards from it; that he saw the trucks approaching as indicated; that the towing truck swerved to the north, and he then saw the tow-chain break, fly up and drop back down under the towed truck and the truck started going north across the road, crashed with the Oldsmobile and both caught fire. He estimated the speed of the two trucks at the time at "35 to 60" miles per hour but he said he had no definite opinion as to their speed.

The jury was instructed that before a verdict could be found against defendants it was necessary to prove by a pre-

ponderance of the evidence that they were negligent and such negligence was a proximate cause of the death of the deceased. Then followed an instruction on the sudden peril rule which was properly given, under the facts related. (*Graham* v. *Consolidated Motor Transport Co.*, 112 Cal.App. 648 [297 P. 617].) It does appear that there was independent evidence of defendants' negligence aside from the claimed unavoidable feature, which might well have justified a verdict against them. An instruction in the language of section 701 of the Vehicle Code in reference to one vehicle towing another was given. An instruction in the language of sections 525 and 510 of the Vehicle Code was likewise given.

Complaint is made because the trial court refused plaintiffs' proffered instructions on the doctrine of res ipsa loquitur. It does appear that the facts and circumstances of the accident were fully explained by plaintiffs' witnesses.

There is authority for the rule that if it appears upon the face of plaintiff's own evidence that the accident may have resulted from any one of two or more causes, with one of which the defendant may not have had any connection, a foundation has not been laid for invoking the doctrine; that plaintiff's failure of foundation exists when plaintiff's evidence shows that his own conduct may have been a proximate cause of his injury. (*Meyers* v. *G. W. Thomas Drayage etc. Co.*, 108 Cal.App.2d 529 [239 P.2d 118]; *Carlsen* v. *Diehl*, 57 Cal.App. 731 [208 P. 150]; 2 BAJI, 4th ed., Inst. 206, p. 629, note 2; *Olson* v. *Whitthorne & Swan*, 203 Cal. 206, 208 [263 P. 518].)

It has been further held that the province of the jury is invaded where an instruction assumes the existence of a fact which is not in evidence or in respect to which there is a conflict in the evidence. (24 Cal.Jur. p. 841, § 101.)

In *Seneris* v. *Haas*, 45 Cal.2d 811 [291 P.2d 915, 53 A.L.R.2d 124], it was held that the conditions to be met before the doctrine of res ipsa loquitur may be applied are that the accident or injury must be of a kind which ordinarily does not occur in the absence of someone's negligence, that it must be caused by an agency or instrumentality in defendant's control, and that it must not have been due to any voluntary action or contribution on plaintiff's part; that although one may be in control of the instrumentality causing injury to another, the doctrine of res ipsa loquitur does not apply unless it can be said, in the light of all common experience, that the accident was more likely than not the result of defendant's

negligence; that when the evidence is conflicting or subject to different inferences it is for the jury, under proper instructions, to determine whether each of the conditions necessary to bring into play the rule of res ipsa loquitur is present. (See also *Buck* v. *Standard Oil Co.*, 157 Cal.App.2d 230 [321 P.2d 67].)

From the authorities examined we conclude that it was not prejudicial error to refuse to give a proffered instruction in the language of BAJI Number 206-B, and its educational instruction Number 206-C. As will be noted, the proffered instruction would have told the jury, as a matter of law and fact that "From the happening of the accident involved in this case as established by the evidence, an inference arises that the proximate cause of the occurrence was some negligent conduct on the part of the defendant. . . ." The facts produced do not show, as a matter of law, that the giving of such an instruction by the court was mandatory. This case involved a collision between the driver of one car and the driver of one or more moving cars, and the possible interjection of a third agency, any one of which might reasonably be the proximate cause of the accident.

In *Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436, 443 [247 P.2d 344], it was said: ". . . res ipsa loquitur will not apply if it is equally probable that the negligence was that of someone other than the defendant," citing cases. See also *Meyers* v. *G. W. Thomas Drayage, etc. Co.*, 108 Cal.App.2d 529, 533 [239 P.2d 118]; *Lucid* v. *E. I. Du Pont de Nemours Powder Co.*, 199 F. 377 [118 C.C.A. 61]; *Scellars* v. *Universal Service Everywhere*, 68 Cal.App. 252, 256 [228 P. 879]; *Danner* v. *Atkins*, 47 Cal.2d 327 [303 P.2d 724]; and *Seneris* v. *Haas, supra*, where it is said, at page 827: "The existence of the conditions upon which the operation of the doctrine is to be predicated is a question of fact and the right of the jury to find those facts must be carefully preserved." (See also *Phillips* v. *Noble*, 50 Cal.2d —— [323 P.2d 385]; and *Shaw* v. *Pacific Greyhound Lines*, 50 Cal.2d —— [323 P.2d 391].)

The court did not err in giving an instruction to the effect that " 'The mere fact that an accident happened, considered alone, does not give rise to a legal inference that it was caused by negligence or that any party to this accident was negligent.' " (*Barrera* v. *De La Torre*, 48 Cal.2d 166 [308 P.2d 724]; *Middleton* v. *Post Transportation Co.*, 106 Cal. App.2d 703 [235 P.2d 855].)

■ Likewise, the trial court did not err in submitting. the issue of contributory negligence to the jury and instructing on this question. While the deceased, in his conduct, was clothed with the presumption of due care (*Jones* v. *Maynard*, 141 Cal.App.2d 643, 646 [297 P.2d 461]) there is evidence, if believed by the jury, that instead of turning to his right to afford the oncoming trucks the opportunity of avoiding the boy on the bicycle, deceased failed to observe the situation and made little, if any, endeavor to clear the roadway and avoid the accident, but attempted to drive his automobile between the towing truck and the towed truck. A factual question arose for the determination of the jury. (*Lee* v. *Hackney*, 110 Cal.App.2d 444 [242 P.2d 933].)

■ It is next argued that defendants were guilty of negligence as a matter of law in that the evidence conclusively shows they violated section 701, subsections (e) and (g) of the Vehicle Code. The question of defendants' violation of these sections and the question of the proximate cause of the death of the deceased was properly left to the jury. (*Christensen* v. *Harmonson*, 113 Cal.App.2d 175 [247 P.2d 956]; *Grasso* v. *Cunial*, 106 Cal.App.2d 294 [235 P.2d 32].)

■ The last question involves plaintiff wife's testimony and conduct in reference to her marital status and alleged damages for loss of comfort, society and support. She alleged, as a surviving wife, that she was an heir at law of deceased. This allegation was denied for lack of information and belief. On direct examination she testified she met Ronald Rayner in May and was married to him on July 24, 1954, in Nevada. Their marriage certificate was admitted in evidence. The accident occurred on August 18, 1954. She had two children by a previous marriage and was divorced from their father on April 7, 1954. She lived with Ronald and his parents until his death. She said that he supported her and her two children. She was then asked on cross-examination if she had not remarried since the death of Ronald and she answered in the negative. Apparently counsel for defendants were in possession of contradictory evidence. She was then asked if she and one Carroll Bennett were not married on April 1, 1955, in Duncan, Oklahoma, by Reverend J. O. Howard, in the presence of one Carol Thomas. She denied this fact and said she did not know such persons and claimed she had been living with her parents since Ronald's death. An authenticated copy of a marriage license issued to her and Carroll Bennett, and a copy of a decree of divorce obtained by her

from her former husband, with a printed notation thereon that this was not an absolute divorce and neither party could remarry for six months thereafter, was offered and received in evidence as defendants' Exhibit A, over limited objections. Thereafter she admitted Carol Thomas was her sister. She testified she did marry Ronald within the six months period referred to in the decree, but was advised this was legal as long as she remarried in another state. She still maintained she had not remarried since Ronald's death. The minister who performed the ceremony testified, without objection, that he married this couple at the time and place indicated in the license and that Thelma, Carroll Bennett, and the sister, Carol Thomas, were present.

Thereupon counsel for plaintiffs moved to strike "the marriage certificate" from the record. The motion was denied. Thereafter Thelma admitted she did not tell the truth about her subsequent marriage and had not even told her attorney about it. Her counsel spent much time in his argument to the jury apologizing for his client and asked that the jury not blame him or her for this, and not to consider it in arriving at a verdict. Judgment went for defendants.

The claim is that the court erred in refusing to strike from the record the evidence pertaining to Thelma's remarriage and refusing to instruct the jury that all evidence as to the subsequent marriage was limited to the purpose of impeaching her testimony and could not be considered to diminish or divert her claim.

At the trial, counsel for plaintiffs did not object to the cross-examination of Thelma in respect to her subsequent marriage which she then denied. It was not until the presentation of the marriage certificate that objection was made to the introduction of Exhibit A on the grounds that it was "immaterial, irrelevant and incompetent insofar as the divorce is concerned." The motion to strike was limited to the "marriage certificate" and not to the other testimony produced showing that in fact such a marriage was performed. An objection to the admission of all evidence on the subject cannot be made for the first time on appeal. The marriage certificate was properly received, at least for the purpose of impeachment, and did have some bearing on the question of loss of comfort, society and support, particularly in view of the opening statement of plaintiffs' counsel to the jury that he intended to prove that she was compelled to and did live

with and was dependent on her parents for support ever since Ronald died. Thelma's testimony was to the same effect. If it was error to impeach her on a collateral matter, as claimed by her, under *Gonzales* v. *Pacific Greyhound Lines*, 34 Cal.2d 749 [214 P.2d 809], plaintiff invited such evidence by claiming future loss of support and denying her subsequent marriage. A wide discretion is allowed on cross-examination to determine the facts and the truth of the testimony given on direct examination. (*Newman* v. *Los Angeles Transit Lines*, 120 Cal.App.2d 685, 691 [262 P.2d 95].) The evidence was admissible and the proffered instruction was properly refused. No prejudicial error resulted.

Although it was not indicated from the record as to which party offered the instructions here under question, at the time of the argument before this court it was conceded that they were offered by the parties they favored and no point should be made of this failure to so designate.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.