[Civ. No. 9328.    Third Dist.    Nov. 5, 1958.]

JAMES OTIS SIMS et al., Appellants, v. MIKE PHILLIPS, Respondent.

J. Adrian Palmquist and Francis T. Cornish for Appellants.

Glenn D. Newton, David W. Packard and William W. Coshow for Respondent.

WARNE, J. pro tem.*—This is an appeal from a judgment entered upon a verdict for defendant in a wrongful death and personal injury action in which the jury made a special finding that the respondent was not guilty of negligence.

The appellants are father and son. James Otis Sims, hereinafter referred to as appellant, was severely injured and his wife was killed instantly in an accident which occurred on United States Highway 99, between Redding and Dunsmuir where the highway is one lane each way, is of blacktop construction, is 22 feet wide, has a curve with a 500 foot radius, and a 6 per cent grade ascending to the north. The accident happened about 4 o'clock on the afternoon of May 3, 1956.

*Assigned by Chairman of Judicial Council.

It had been raining and was misty at the time of the accident. The pavement was wet.

Appellant and his wife were traveling north in their Pontiac automobile at an estimated speed of 40 to 45 miles per hour. Respondent was southbound, driving a GMC truck-tractor which was pulling a flatbed trailer upon which was another trailer loaded "piggy-back," and was traveling at an estimated speed of 25 to 30 miles per hour. Respondent testified that he had just rounded the turn or curve and was from 50 to 150 feet distance from the Pontiac when it crossed about a foot over the white center line and into his lane, whereupon he pulled quickly over to the right to avoid the Pontiac and in so doing, the wheels of the right side of his truck went into a ditch at the side of the road. This was just before the impact. Respondent testified that he then glanced back into his right hand mirror as he felt the trailer might hit some rocks off the right side of the road. Just then he felt the impact, and he looked back in the other rear view mirror and saw smoke and wheels flying. At no time preceding or during the accident did he apply his brakes.

Appellant contradicted respondent, testifying that his wife was driving and he was sitting alongside of her in the front seat. He was not looking ahead at the moment, but heard a distressed gasp from his wife and he looked up and saw the tractor in the southbound lane and the trailer blocking the northbound lane; that the trailer was less than 75 feet away and had already jack-knifed; that both the tractor and the Pontiac were in their proper lanes, but not the trailer.

It appears that the impact was between the left rear tire of the trailer being pulled by the GMC tractor and the left front of the bumper of the Pontiac. The rear axle and the dual wheels of the trailer were disengaged and knocked from under the trailer. The trailer, being carried "piggy-back," had shifted to the left and made a deep groove down the roof of the Pontiac, leaving tire marks thereon. The disengaged wheels came to rest in the ditch on the westerly side of the highway, approximately opposite where the Pontiac came to rest on the east edge of the highway. The remainder of the tractor-trailer combination continued south and came to rest on the west side of the highway approximately 270 feet south of the Pontiac. The testimony is conflicting as to whether the debris and broken parts from the Pontiac were scattered in both lanes of the highway or were mostly in the northbound lane. A series of 10 gouges were left in the pavement by the

tractor leading away from the Pontiac, the larger of which was to the east of the center line, thence at intervals continued southwesterly on the west side of the highway to where the tractor came to rest. Officer Osborne of the California Highway Patrol testified that these marks were made by the trailer. He arrived at the scene of the accident a few minutes after it happened and later made an investigation as to the cause thereof. The evidence is uncertain and conflicting as to where the impact occurred in respect to location on the highway. However, the gouge marks would seem to support appellant's position that the point of impact was in the east lane, i. e., appellant's side of the road.

To refute appellant's theory that the trailer "jack-knifed" and swung into the east lane, respondent called, as witnesses, Sergeant Morris of the California Highway Patrol and a college instructor of physics. The two witnesses testified as to the experiments they made with a Pontiac station wagon near the scene of the accident. From the tests they determined a coefficient of friction from which they computed the maximum speed at which a vehicle could round the curve at the site of the accident without sliding or skidding. They found such speed to be slightly in excess of 69 miles an hour and, therefore, concluded that the respondent's tractor and trailer could go around the curve at a speed of 30 miles an hour without sliding or skidding into the east lane. Appellant vigorously assailed the qualifications of the two witnesses as experts and contended that no consideration can be given to their opinions, as they were based on tests made with a station wagon rather than a truck and trailer and on dry, not wet, pavement. ■ While we believe that there is merit in appellant's contention, it does not appear that objections were made to the qualification of the experts in the trial court, hence the issue may not be raised on appeal for the first time. (19 Cal.Jur.2d 22; *Bundy* v. *Sierra Lumber Co.*, 149 Cal. 772 [87 P. 622]; *Reardon* v. *Richmond Land Co.*, 21 Cal.App. 357 [131 P. 894].)

■ Appellants further contend that the opinions of the witnesses had no foundation and they ignore the physical facts. A similar attack is launched against the witnesses' opinions as to the angle at which the vehicle struck. It is appellants' position that the opinions of the witnesses are without evidentiary value as the physical facts found at the scene conclusively establish the accident resulted from the negligence of respondent, and the opinion of respondent's

expert witnesses which disregarded those facts are not evidence. While the physical evidence would have sustained a finding that the point of impact was in the east lane, this does not mean that the jury's finding that the defendant was free from negligence is without evidentiary support. The jury could have reasonably found that the respondent's trailer "jack-knifed" and swung into the east lane of traffic, but also further found that the "jack-knifing" was not attributable to any negligence on the part of respondent, but was due to his abruptly turning to the right to avoid hitting the Pontiac, which suddenly crossed the white line into his lane of traffic. Consequently appellants' contention that the jury's special finding is not supported by substantial evidence cannot be sustained. ■ However, the trial court gave an instruction on unavoidable accident. Since the trial of this case, the Supreme Court has held that an instruction on unavoidable accident is improper. (*Butigan* v. *Yellow Cab Co.*, 49 Cal.2d 652, 661 [320 P.2d 500].) In the cited case the Supreme Court held that instruction on unavoidable accident "obviously overemphasized defendants' case, and . . . the instruction suggested to the jury that they should consider unavoidability as an issue or ground of defense separate and apart from the questions of negligence and proximate causation."

For like reasons, we feel that it was prejudicial error for the trial court to instruct the jury on unavoidable accident, especially is this so when we consider the conflicting testimony.

Since the judgment must be reversed for the reasons stated, we do not consider it necessary to discuss other points presented on this appeal.

The judgment is reversed.

Peek, Acting P. J., and Schottky, J., concurred.

A petition for a rehearing was denied December 1, 1958, and respondent's petition for a hearing by the Supreme Court was denied December 30, 1958.