[Civ. No. 23186.   Second Dist., Div. Three.   June 12, 1959.]

BETTIE F. PRENTICE et al., Appellants, v. HARRY ROBERTS, JR., et al., Respondents.

314

Joseph R. Grillo for Appellants.

Spray, Gould & Bowers for Respondents.

VALLÉE, J.—Appeal by plaintiffs from a judgment for defendants entered on a jury verdict in an action for damages for personal injuries and property damage arising from an intersection collision of automobiles. The issues were made by the complaint and the answer thereto, and by a cross-complaint on the part of defendants and plaintiffs' answer thereto. The judgment was that plaintiffs take nothing on the complaint and that defendants take nothing on the cross-complaint. Defendants did not appeal from the judgment for plaintiffs-cross-defendants on the cross-complaint.

The collision occurred shortly before 4 p. m. on March 31, 1956, at the intersection of Firestone Boulevard and Rives Avenue in the Downey section of Los Angeles County. Firestone runs generally east and west; Rives, north and south. Firestone was 76 feet wide; Rives was 50 feet wide north of Firestone. The day was dry and clear, but overcast; visibility was good. The street was level. There were two double white lines three feet apart dividing eastbound and westbound traffic on Firestone. There were two traffic lanes on each side of the double lines. There was a 25-mile-an-hour speed-limit sign posted on Firestone 50 feet east of the east curb line of Rives facing eastbound traffic. There was a 45-mile-an-hour sign on Firestone about 50 feet east of the east curb line of Rives facing westbound traffic. The speed limit for westbound traffic to the east of this sign was 25 miles an hour. Traffic at the intersection was controlled by electric stop signals.

Plaintiff Bettie Prentice was driving a Chevrolet automobile eastbound in the lane next to the south of the two double white lines on Firestone. She testified: she stopped behind a car ahead of her for a red light; when the signal turned green, she gave a left-turn signal and entered the intersection; she stopped, with the wheels of her car on or slightly over the westerly crosswalk across Firestone, and permitted two or three oncoming cars from the east to pass; a car westbound in the lane next to the double line signaled for a left turn and as it turned, she "inched" into the lane for westbound traffic, advancing about three-quarters of a car length at a speed of one or two miles an hour; as she did this, she looked eastward in the second lane of westbound traffic a distance of 200 feet where a nursery was located and "saw an empty lane of traffic"; she had a clear and unobstructed view of both westbound lanes; between her and the nursery there was nothing at all; she discontinued her hand signal and started to turn; from that point she remembered nothing until after the collision; she remembered starting to turn her wheels; the next thing she remembered, her head was near the rear view mirror in the center of the windshield; there were people around; she did not hear any brakes, or the squeal of any tires, or any horn blowing, and did not feel an impact.

Defendant Harry Roberts, Jr., was driving a Buick automobile westbound on Firestone in the second lane north of the two double white lines. Defendant Winifred Roberts, his wife, was in the front seat beside him and their two children were in the rear seat. Mrs. Roberts testified: defendants' car was traveling 30 to 35 miles along Firestone; it did not decrease its speed as it approached Rives; she saw plaintiffs' automobile for the first time when defendants' car was "almost at the intersection" just east of the crosswalk. When asked where the Chevrolet was when she first saw it, she said: "A. I really don't know. I just know it was ahead of us and that it was just in front—the front wheel perhaps turned, and I know it was coming out of that lane and it was near the cross walk."[1] When she saw the "left front wheel" of plaintiffs' car turn, she yelled "Harry," and her husband put on the brakes. Mrs. Roberts also testified: "Q. Tell me this, Mrs. Roberts, isn't it true that as you were driving down the street, all at once you saw a car in front of you and you yelled

---

[1] At her deposition Mrs. Roberts testified the Chevrolet was in the intersection when she first saw it.

'Harry' and that is about all you know about this accident?
A. Well, there is not much more than that, no.''

Mr. Roberts testified: he had three beers that day, he did not know the time interval between them, he had one just before leaving home; while driving along Firestone he did not notice any speed limit signs; he was traveling between 30 and 35 miles an hour as he approached Rives; there were business establishments on the north side of Firestone leading to its intersection with Rives; as he approached Rives he did not decrease his speed; when his wife exclaimed ''Harry,'' he immediately took his foot off the gas and ''started for the brake''; he saw plaintiffs' automobile for the first time as he applied the brakes; it was moving northeasterly in the middle of the intersection and had crossed both double white lines; he had no idea how fast or how slow plaintiffs' automobile was going; he believes there was westbound traffic in the lane next to the double white line as he approached the intersection; he did not know whether it was in motion or stopped; his automobile left skid marks commencing inside the east crosswalk and extending 30 feet; it collided with the right side of plaintiffs' car slightly front of center, and the main impact of his car hit the center post of plaintiffs' car.

Mr. Roberts testified further that immediately after the accident one of his boys said to him, ''Daddy, it serves you right, you were going too fast,'' that he told them ''to go away. They had said too much already.''

A customer and the gas station attendant who were standing in the gas station on the northwest corner of the intersection gave testimony substantially corroborating plaintiffs' testimony regarding the movements of her automobile. One of them testified that after the collision one of the boys who had been in the accident said to his father, ''Serves you right, Daddy. You were going to[o] fast,'' and the Buick driver told the boy to keep quiet.

The gas station attendant testified: Mrs. Prentice ''granted leeway to somebody else to go past and she had a clear field where he come from when I first seen him down there''; she ''conceded to a couple of cars to get through''; ''she had a clear field to go across''; he first saw defendants' car when it was at the nursery, ''probably a couple of hundred feet'' away, and that it was going 50 to 60 miles an hour; there was nothing to obstruct his view.

A witness who was waiting in a car at the stop light southbound on Rives testified that the signal ''was getting ready to turn'' when he first saw the cars; the Chevrolet was headed

north, going between 25 and 30 miles an hour, and the Buick was in the intersection, going between 35 and 45 miles an hour and was still "traveling 35 or 40" while braking; the Chevrolet was going straight north; "Momentarily I seen him when he started sliding in with the screeching of brakes"; it all took "place pretty quickly" and "You can draw some funny conclusions"; it all happened in less than a second.

An officer who investigated the accident testified the point of impact was 20 feet south of the north curb of Firestone and 17 feet east of the west curb of Rives; there were right front skid marks, prior to the impact, 29 feet 9 inches long, and left front skid marks 23 feet 6 inches long; the skid marks turned northwesterly at the point of impact, the right front marks being 9 feet 9 inches long and the left front 11 feet 4 inches long.

On the impact the Chevrolet spun around, making about a 180-degree turn clockwise. Its rear end struck the front end of the car which had been stopped for the signal southbound on Rives. It came to rest in the intersection directly in front of that car facing south and slightly east. It was a complete wreck.

Plaintiffs were represented by counsel of their own choice in the action against defendants Roberts and by counsel for their insurance carrier as cross-defendants in the action on the cross-complaint. Counsel for the insurance carrier, representing plaintiffs as cross-defendants, and counsel for defendants requested and the court gave the former standard instruction on unavoidable accident. (BAJI 134.) Plaintiffs assert prejudicial error.

It is error to give the instruction on unavoidable accident in a negligence case where the plaintiff has the burden of proving that the injury complained of was proximately caused by the defendant's negligence and where the ordinary instructions on negligence and proximate cause adequately so inform the jury. (*Butigan* v. *Yellow Cab Co.*, 49 Cal.2d 652, 659-660 [320 P.2d 500].) The jury was adequately so instructed.

In response to plaintiffs' contention, defendants assert plaintiffs invited the error. They say that plaintiffs, as cross-defendants, requested the instruction and hence may not complain. We disagree. It is asserted by plaintiffs and tacitly conceded by defendants that the answer to the cross-complaint, which pleaded unavoidable accident, was prepared by counsel for the insurance carrier. It was counsel for the

insurance carrier who requested the instruction, not counsel for plaintiffs as plaintiffs. The action on the complaint and the answer thereto was a distinct and independent action from the action on the cross-complaint and the answer thereto. (*Pacific Finance Corp.* v. *Superior Court,* 219 Cal. 179, 181-183 [25 P.2d 983, 90 A.L.R. 384] ; *Case* v. *Kadota Fig Asso.,* 35 Cal.2d 596, 603 [220 P.2d 912] ; *Douglas* v. *Superior Court,* 94 Cal.App.2d 395, 398 [210 P.2d 853] ; *Shearer* v. *United California Theatres,* 133 Cal.App.2d 720, 723-724 [284 P.2d 934].) The insurance carrier was the real party in interest in the action on the cross-complaint and the answer thereto. Plaintiffs had no choice of counsel on the defense to the cross-complaint. The attorneys for the cross-defendants were chosen by the insurance carrier; they were employed by the insurance carrier to defend against the cross-complaint; they were not employed by plaintiffs to assist in recovering damages for the injuries Mrs. Prentice sustained. Counsel for the insurance carrier did not represent plaintiffs and had no duty to, and did not prosecute or assist in, the prosecution of the action on the complaint. Prior to the arguments to the jury the court instructed counsel for all parties as to the order of argument and they agreed thereto. The court stated that counsel for plaintiffs would make the opening argument and that he should confine himself to the complaint, that counsel for the insurance carrier would argue the cross-complaint and confine himself to his answer and the defense of the cross-complaint, that counsel for defendants and cross-complainants would then argue in response to both arguments and in behalf of the cross-complaint, and that counsel for plaintiffs would close, "limiting his argument to the issues in the complaint and not mentioning the issues in the cross-complaint." It would be highly technical and grossly unfair to plaintiffs to hold them responsible for the action of counsel for the insurance carrier in submitting the instruction on unavoidable accident.

The question is : Was the giving of the instruction prejudicial? The question in every case is whether, on the facts of the case, the party complaining was deprived of a fair trial. (*Halleck* v. *Brown,* 164 Cal.App.2d 586, 590 [330 P.2d 852].) The determination whether, in a specific instance, the probable effect of an instruction on unavoidable accident has been to mislead the jury and whether the error has been prejudicial so as to require reversal depends on all the circumstances of the case, including the evidence and other instructions given.

(*Butigan* v. *Yellow Cab Co.*, 49 Cal.2d 652, 660-661 [320 P.2d 500].)    In *Halleck* v. *Brown*, 164 Cal.App.2d 586 [330 P.2d 852], this court said (p. 589):

"It is well settled that the giving of the unavoidable accident instruction is prejudicial where the evidence discloses no condition and no action or conduct apart from the conduct of the parties that could reasonably have been found sufficient to acquit them of negligence."

*Martz* v. *Ruiz*, 158 Cal.App.2d 590 [322 P.2d 981], states (p. 592): "In the instant case there is no evidence that the accident resulted from any cause other than negligence. There is no suggestion that any other vehicle interfered with the movement of either of the two cars or that either of them developed any mechanical difficulty that caused or contributed to the collision. It is thus clear there was no basis in the evidence for giving an instruction on unavoidable accident."

There was no element of unavoidable accident established by any evidence which would justify the giving of the instruction under the Butigan decision. Plaintiffs had a right to have the jury determine whether Mrs. Prentice was contributively negligent uninfluenced by the theory of unavoidability. The evidence would support a determination that the sole proximate cause of the accident was the negligence of defendant Roberts, Jr. (*cf. Briscoe* v. *Pacific Elec. Ry. Co.*, 89 Cal.App.2d 439 [200 P.2d 875]), and that plaintiff Mrs. Prentice was not negligent. As pointed out in Butigan, "the giving of the instruction obviously overemphasized" defendants' case and "suggested to the jury that they should consider unavoidability as an issue or ground of defense separate and apart from the questions of negligence and proximate causation. An attempt by the jurors to carry out such a direction could be expected to result in confusing and misleading them." (*Butigan* v. *Yellow Cab Co.*, 49 Cal.2d 652, 661 [320 P.2d 500].) It appears highly probable that the application of the instruction by the jury in its deliberations may have tipped the scale in defendants' favor, thus depriving plaintiffs of a fair trial.

We conclude on the record that the giving of the instruction on unavoidable accident must be held prejudicial to plaintiffs.

It is unnecessary to consider plaintiffs' other points.

The judgment in favor of defendants Harry Roberts, Jr., and Winifred Roberts and against plaintiffs Bettie F. Prentice and Herbert L. Prentice is reversed.

Shinn, P. J., and Wood (Parker), J., concurred.