341 P.2d 816]

[Civ. No. 23480.   Second Dist., Div. Three.   July 13, 1959.]

FRANCES A. YOCKEL et al., Appellants, v. ANNE GIPSON HATLEY et al., Respondents.

Fisk & Tyson and Richard P. B. Tyson for Appellants.

Sawyer, McGurl & Burrows and Robert E. McGurl for Respondents.

SHINN, P. J.—This is an action for damages resulting from injuries received when an automobile driven by plaintiff Lewis, in which plaintiff Yockel was a passenger, collided with a car belonging to defendant Kantor, also known as Zatulovsky, and driven by defendant Hatley. The collision occurred when the car of the defendants veered into and stopped in the lane in which plaintiffs' car was traveling on the Hollywood Freeway. In a jury trial, verdict and judgment were for defendants and plaintiffs appeal.

At the request of the defendants the court gave an instruction on unavoidable accident. This error constitutes the sole ground of the appeal. Defendants say: ''The giving of the complained-of instruction on unavoidable accident was proper and correct. The instruction did not mislead the jury; it did not confuse the jury; and there was no prejudicial error in the case.'' If we could agree we would have to affirm the judgment; but we cannot agree.

It is error to give the instruction except in exceptional circumstances which do not exist in the present case. (*Butigan v. Yellow Cab Co.*, 49 Cal.2d 652 [320 P.2d 500].) As in all other cases where error has been committed the question of prejudice must be examined in the light of the special facts of the case, and in accident cases these are of infinite variety.

Mrs. Hatley, 40 years of age, was housekeeper for the Kantors in Hollywood. She was driving their Cadillac westerly from downtown Los Angeles to Hollywood. We shall first give Mrs. Hatley's account of the accident. There were four lanes for westbound traffic, numbered from the middle of the freeway. She was in lane 3; as she approached the Glendale Boulevard turnoff, a ramp, a Chevrolet which was in lane 4, started to turn off and then came back into lane 3; Mrs. Hatley turned left, put on brakes, swerved into lane 2 and came to a stop; her car was stopped when it was struck by the Lewis car; she had been stopped for some period of time, it seemed to her like two minutes or something like that before the collision; she was looking toward the east and saw the Lewis car approaching and thought it would stop; if she had turned her car to the right the Lewis car would have hit her car in the rear; as it was, it struck the front fender and wheel. She thought the Lewis car was going 40 or 50; she was not injured. The Cadillac had power brakes and "that is why it swirled when I stepped on the brakes; made it swirl so easily." She was going about 35; the Chevrolet was about a car length ahead of her when it started off and it whirled right back; she had not noticed the Chevrolet until it started to turn off. She first saw the Lewis car when it was about 40 feet away: ". . . I was already at a complete stop when she hit me, and I saw her coming and I just sit there to see, I mean, would she stop"; she was in lane 2 when she first saw the Lewis car; she had swirled around crossways of the traffic and come to a stop; her motor was still running. In her deposition she stated she had been stopped four or five minutes, but this obviously was an incorrect estimate; she gave no signal before turning into lane 2; the Chevrolet was about 15 feet in front of her when it started to turn into lane 3. When she was afraid she would hit the Chevrolet she put on her brakes and turned to the left. After the accident she did not give Mrs. Lewis her name or address or exhibit to her her operator's license.

Mrs. Lewis, a housewife, aged 40, had been driving a car

for 22 years; her 4-year-old son was in the car but was not hurt. Her top speed was 45; the Cadillac had been to her right; it swerved and came right in front of her and stopped; it kind of lurched out and stopped there; the Cadillac was coming into her lane a couple of car lengths ahead of her and coming pretty fast; she put on her brakes; a truck was coming behind her on her left; she couldn't turn out and she hit the Cadillac, which was stopped at the time, across lane 2 and headed south; it came in jerking or lurching and was rocking until it stopped. She saw no other cars in her lane ahead of the Cadillac and no Chevrolet or other car coming from the right except the Hatley car. She walked over to Mrs. Hatley and asked: "What in the world did you do that for" and Mrs. Hatley replied "I don't know." Mrs. Hatley denied having made the statement.

In the consideration of the question of prejudice there is little purpose to be served in discussing the facts of other cases. ■ Where the jury has been misinstructed, the question of prejudice is often one of great difficulty. The reviewing court must to a certain extent speculate as to the probabilities that the jury was misled and that the verdict was influenced by the error. The problem is not one of law; it cannot be solved except from a consideration of the strength or weakness of the case made out by each of the contending parties. ■ While it is true that prejudice is not presumed it is also true that it will seldom appear to a certainty that a given error in an instruction resulted in a verdict that would not otherwise have been rendered. ■ The question of prejudice being one of probabilities as to whether a material issue was fairly tried, a reviewing court must give consideration to what it believes would have been a reasonable and just result of the trial if the error had not been committed.

Defendants cite in support of their contention that plaintiff suffered no prejudice *Grasgreen* v. *Acme Auto Parks*, 165 Cal.App.2d 680 [332 P.2d 337]; *Alarid* v. *Vanier*, 50 Cal.2d 617 [327 P.2d 897] and *Rayner* v. *Ramirez*, 159 Cal.App.2d 372 [324 P.2d 83] and they say that the facts in *Rayner* were very similar to those of the case at bar. In each case the unavoidable accident instruction was held not to have been prejudicial. We mention these cases to point out that the reasons given for the conclusions reached are inapplicable to the facts of our case. In *Grasgreen* the court attributed the verdict in favor of the defendant to probable findings that Grasgreen was guilty of contributory negligence and had

given obviously false testimony. These were factors which had a direct bearing upon the question of prejudice. In *Alarid* the court held that it could have been found from uncontradicted testimony that the defendant was not guilty of negligence. In *Rayner* the defendant, who was driving one truck and towing another, swerved a few feet onto the wrong side of the highway to avoid a boy on a bicycle but returned to the right side in time to have avoided an oncoming car but for the fact that the truck he was towing failed to return in time due to the breaking of the tow chain; it was the towed truck that collided with the car. We said in *Halleck* v. *Brown*, 164 Cal.App.2d 586 [330 P.2d 852], that we agreed that it was highly improbable that Ramirez would have been found guilty of negligence had the unavoidable accident instruction not been given. The cases cited are of no help to defendants.

We shall not repeat what was said in *Butigan* as to the vice of the instruction, other than that it suggests a defense other than absence of negligence and is confusing. Here it was stated in effect that the jury could reasonably conclude that the conduct of Mrs. Hatley was unavoidable. That, in reality, was what the instruction meant in this case and the jury doubtless so understood it. It tended to divert the minds of the jurors from or minimize the following facts: anyone driving in fast moving traffic on the modern freeways must be constantly on the alert for careless driving of other cars; if another car had come into lane 3 ahead of Mrs. Hatley there was no evidence that she could not have slowed down so as to avoid striking it. In fact, a reasonable inference was that with her powerful brakes she could have come to a quick stop without leaving her lane; it did not appear that the Chevrolet was going slower than defendant's car; Mrs. Hatley testified it was going "pretty fast" and that she was going 35; a prudent driver is prepared to slow down when someone cuts in front of him. Turning suddenly from one lane to another on a high speed freeway is an exceedingly dangerous thing to do and going into another lane and suddenly stopping is suicidal; if Mrs. Hatley had turned into lane 2 and kept moving the accident might not have occurred; it was not shown that she could not have turned out around the other car and kept moving; from the testimony of Mrs. Hatley it appeared that she knew that if she suddenly activated her power brakes with the front wheels turned from a straight line the car had a tendency to swerve sideways and that she evidently fell into a panic due to her inexperience as a freeway driver. It is a well

known fact that in these times of fast traffic reasonable precautions for safety require one to be prepared for the unexpected. We are not unmindful of the admitted fact that Mrs. Hatley received the benefit of an instruction which stated the rules applicable to the sudden appearance of danger. But the unavoidable accident instruction gave her an additional and undeserved advantage.

It is scarcely necessary to mention that the plaintiffs were blameless. They were entitled to have their case tried upon the sole issue of the negligence of Mrs. Hatley. There is enough to be considered before Mrs. Hatley could be found to have been free of negligence to convince us that a trial court or jury should decide that issue. We do not believe it would be fair and just to deprive plaintiffs of the right to have the issue tried again under proper instructions. We do not intimate that the result will be different but only that a different result would not be improbable. And we are necessarily of the opinion that upon the same evidence a finding that Mrs. Hatley was negligent would not be unreasonable. We are dealing with an isolated case in which no question of law is involved and the unique facts of which will in all probability never recur. And we trust that we have seen the last of the cases involving the same erroneous instruction.

We can only add in summary that we are convinced that it would more accord with justice for this court to send the case back for a retrial rather than to assume that there is slight probability that the error complained of was prejudicial.

The judgment is reversed.

Wood (Parker), J., and Vallée, J., concurred.