[Civ. No. 18279.   First Dist., Div. One.   July 23, 1959.]

ANTHONY N. BORG, Appellant, v. RICHARD
McDONNELL et al., Respondents.

Saul N. Ross and Joseph A. Galligan for Appellant.

Pelton, Gunther, Durney & Gudmundson and W. W. Gud-
mundson for Respondents.

WOOD (Fred B.), J.—Plaintiff, walking along the Bay-
shore Highway in a northerly direction, was hit by defend-

ant's automobile which was traveling in the same direction. Upon this appeal from an adverse judgment plaintiff assigns prejudicial error in the giving and refusing of instructions. Our examination of the record convinces us that the giving of an instruction on unavoidable accident* was prejudicially erroneous, under the holding in *Butigan* v. *Yellow Cab Co.*, 49 Cal.2d 652 [320 P.2d 500, 65 A.L.R.2d 1], a decision filed on the next to the last day of the trial herein.

## THE FACTS

The section of highway involved had four lanes divided into two southbound and two northbound lanes. The outer northbound lane had an asphalt surfaced shoulder about 6 feet wide, bordered by an unimproved dirt shoulder about 25 feet wide. Plaintiff testified that he was walking north along the dirt shoulder about 4 feet east of the asphalt shoulder and that his friend Joseph Maltaman accompanied him on his left. Defendant testified that he was driving north and that the left side of his car was closer to the dividing line between the fast and slow northbound traffic lanes than to the right edge of the slow or outer lane, and that one of the pedestrians was directly ahead of the center of his car and the other pedestrian was directly in front of defendant's right headlight when he first saw them.

The accident occurred on the 22nd of January, 1956. Maltaman testified it happened around 5:20 p.m. Plaintiff said it was "ten minutes, maybe five minutes, maybe close to 5.00." Defendant's witness Albert Martinez, who happened to be in the vicinity at the time, said he had been out there about 20 minutes, between 5 and 5:20 p.m. Defendant said it happened near 6 o'clock, 5 minutes to 6 approximately.

Maltaman said it was still light, approaching dusk. Plaintiff said he had just measured a building lot nearby. In doing

---

*This instruction read the same as did the instruction in the Butigan case, except as follows:

It omitted the fourth sentence of the Butigan instruction and substituted therefor the following: "No one may be held liable for injury resulting from an unavoidable accident."

It used the last sentence of the Butigan instruction but changed "any defendant" to "either party" and at the end of that sentence changed "that defendant" to "the defendant."

It added the following at the end of the instruction: "Whether or not the accident in question in this case was unavoidable is, of course, a question of fact for you to determine, and in giving the foregoing instruction, I do not imply any opinion or suggestion as to what your findings should be."

so he located a surveyor's mark without the aid of artificial light. Defendant said it was very dark, pitch black. Martinez said he saw two pedestrians walking along. "It was getting dark. It wasn't exactly dark, where I couldn't see. Maybe I could, with the other cars' lights. . . . Maybe it wasn't pitch dark." He did not actually see the persons themselves. He saw silhouettes. He "couldn't distinguish any part, you know, like what they were wearing, anything like that. All I could see was the form of two persons walking." He was north of them, 70 or 100 feet distant. He saw headlights of cars coming. He thought these figures appeared in the headlights. When he saw them they were walking side by side on the roadway, the concrete strip. One was on the easterly edge of it. The other was two or three feet on the inside. He did not see them when they were hit. It was possible that at that time they were walking on the shoulder of the roadway. Plaintiff testified that he was wearing black jeans and a yellow and blue shirt. He thought he had a white cap on.

Defendant said it got dark about 5:30. It was cloudy. At 5:30 he was at St. Patrick's Seminary in Menlo Park and left there about 5:40 via Middlefield Road and Willow Avenue to Bayshore, thence north on Bayshore about 2,000 feet to the scene of the accident.

After going a short distance he turned into the slow lane. Visibility was not as good as it could be. He did not want to take too many chances going at a fast speed.

He was traveling 35 to 40 miles an hour, close to 40.

The pavement was wet but not "slick" wet. It started to rain just before the time of the accident, after he had pulled into the slow lane, a fine misty rain.

The mist had not clouded the windshield. He had perfect vision without using the windshield wipers.

There were no northbound cars ahead of him as far as he could see. He had his lights on, low beam. He did not notice taillights of any autos ahead of him. He did not know how far ahead his lights projected light. He did not know how far he could see ahead. He supposed he could see a red light one hundred feet in front of him, or 200 feet. Up until the moment he saw a pedestrian's face, he saw nothing in front of him. The road looked clear. There was a certain amount of disturbance to the vision because of oncoming headlights, a certain amount of glare. It did not blind him. He saw the pedestrians before he struck them, when they were about 30

feet in front of him. He saw one and had an impression the other one was there too.

As soon as he saw them he hit his brakes and pulled hard to the left. He was not sure if he could avoid them. He knew he could not stop in time. He thought he could make it around them. He hit his brakes hard; not enough to lock the wheels; not hard enough to skid; just hard enough to slow the car down enough to pull around these men. He did not try to lock his wheels. He was afraid of putting the car into a skid and losing control of it, because of the wet pavement.

He did not sound his horn before the accident. He did not have time enough.

He was traveling about 40 miles an hour when he saw these men, and slowed down close to 35 by the time he hit them, and brought his car to a stop about 30 feet beyond the point of impact. That was on a fairly wet pavement. It was not ''slick'' wet.

Plaintiff heard no horn, nor did he see defendant's car, before he was hit. He heard nothing to warn him of an accident before he was hit. Plaintiff saw no lights of cars coming from behind him before the accident happened. He was not aware of the lights of the car. He did not at any time see the headlights of the automobile that struck him. He did not see any lights.

Maltaman said he had no opportunity to get out of the way and made no outcry.

Plaintiff said he landed on his head on the paved shoulder of the road. Defendant said that after the accident both pedestrians were on the shoulder of the highway; just off the road; not on the paved traveled portion of the highway.

From this evidence the jury could have found that the plaintiff or the defendant was negligent or that both were negligent, and that in any such case the negligence was a proximate cause of the accident. For example, if the jury found that plaintiff was walking on the traveled portion of the highway, paying no attention to the vehicular traffic, it could have found that he was, under the circumstances of the case, not exercising ordinary care. Similarly, the jury could have found that defendant was driving at too rapid a pace to make timely observation of obstacles in his path and to exercise proper control of his car under the conditions of low visibility and wetness of pavement described by him, or that he was driving off the roadway and on the shoulder (perhaps,

on the dirt shoulder), and therefore was not exercising ordinary care. Also, there is a lack of evidence of unavoidability such as brakes that suddenly ceased to operate or the sudden intervention of another car crashing in from the side or the rear and rendering defendant's car impossible to control.

Under these circumstances it was error to give the instruction on unavoidability as expounded by our Supreme Court in the Butigan case. It is unnecessary to repeat that exposition here. (It appears in 49 Cal.2d at pp. 658-660.)

The question remains whether this error was prejudicial. We believe it was. Essentially the same factors obtain here that obtained in the Butigan case and rendered the error prejudicial in that case. (See 49 Cal.2d at pp. 660 and 661.) There is a difference in the degree of care imposed upon the defendant (utmost care in the Butigan case; ordinary care in this case); but it is not a significant point of differentiation when the circumstances attending each, respectively, are taken into consideration.

Defendant mistakenly seeks to distinguish the instruction given in this case from that given in the Butigan case. (For those differences, see the footnote on *ante,* p. 261 above, and p. 657 of 49 Cal. 2d.) For example, the last sentence of the instruction in this case, not included in the Butigan case instruction, appeared in the instruction considered in *Martz* v. *Ruiz,* 158 Cal.App.2d 590, 591 [322 P.2d 981], an instruction which was there disapproved, resulting in a judgment of reversal. (A hearing by the Supreme Court was denied in the Martz case; p. 593 of 158 Cal.App.2d.)

No extended analysis of cases involving this question, rendered since the decision in the Butigan case, seems necessary. In *Halleck* v. *Brown,* 164 Cal.App.2d 586, 589-590 [330 P.2d 852]; *Sims* v. *Phillips,* 164 Cal.App.2d 793, 797 [331 P.2d 174], and *McGuire* v. *Navarro,* 165 Cal.App.2d 661, 667-668 [332 P.2d 361], the Butigan rule was applied, resulting in reversals. (In each of those cases a hearing by the Supreme Court was denied.)

Defendant invokes *Alarid* v. *Vanier,* 50 Cal.2d 617 [327 P.2d 897], in which the questioned instruction was used and yet the judgment was affirmed. In that case it appeared that plaintiff had stopped his car at a "stop" sign and that defendant's car hit plaintiff's car in the rear. Defendant's brakes, for the first time, failed to function. He gave evidence indicating that he had exercised care in the maintenance of

his car, including inspection of the brakes. The Supreme Court found there was no *prejudicial* error, saying in part: "No precise formula can be drawn for deciding whether there has been a miscarriage of justice. In each instance the determination whether the probable effect of an instruction has been to mislead the jury and whether the error has been prejudicial so as to require a reversal depends upon all the circumstances, including the evidence and the other instructions given. Here there were instructions that made it clear that under the admitted facts a prima facie case has been proved against defendant and that, in order to escape liability he must exculpate himself by showing justification or excuse. As we have seen, the evidence on this issue was uncontradicted and amply sufficient to show that prior to the accident defendant took reasonable precautions to see that his brakes were in good working condition. Under the circumstances it does not appear that there has been a miscarriage of justice." (P. 625.)

In view of our conclusion concerning the instruction on unavoidable accident, it is unnecessary to discuss the other points considered by the parties.

The judgment is reversed.

Bray, P. J., and Tobriner, J., concurred.

A petition for a rehearing was denied August 14, 1959, and respondents' petition for a hearing by the Supreme Court was denied September 16, 1959.