[Civ. No. 26480. Second Dist., Div. Two. Feb. 21, 1963.]

ORLANDO AMMENTI, Plaintiff and Respondent, v. LOS ANGELES METROPOLITAN TRANSIT AUTHORITY, Defendant and Appellant.

Henry R. Thomas, Robert C. Carlson and Henry F. Walker for Defendant and Appellant.

Bodle & Fogel and Eric Julber for Plaintiff and Respondent.

FOX, P. J.—Plaintiff, a passenger on a "big red" streetcar operated by the defendant between Los Angeles and Long Beach, sued for damages sutained when the car in which he was riding ran out of control down an 810-foot incline leading out of defendant's main terminal in Los Angeles, jumped the tracks at the foot of the incline, and collided with four trucks.

Trial by jury resulted in a verdict for plaintiff. Defendant appeals, alleging prejudicial error on the part of the trial judge in reading to the jury a safety order of the Public Utilities Commission, which defendant claims was inapplicable and misleading.

Two questions, therefore, are presented: (1) Was the Public Utilities Commission safety order erroneously introduced into the proceedings by the trial judge; and, if so, (2) Was the error prejudicial to defendant's cause so that a new trial should be ordered. In deciding the second point, this court must keep in mind the admonition of article VI, section 4½ of the California State Constitution, which provides that no judgment shall be set aside or a new trial granted in any case for such an error ". . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

At plaintiff's request, the trial court instructed the

jury as follows: "I hereby instruct you that at the time of this accident General Order No. 98 of the Public Utilities Commission of the State of California, Section 12.26 thereof, read as follows: 'It is strongly recommended that all passenger stage corporations and street railroad corporations, either singly or collectively, establish comprehensive driver training programs, the objectives of which shall be to thoroughly train drivers in the operation of the vehicles to be driven; acquaint drivers with their responsibilities and duties; improve the drivers' compliance with all applicable rules, regulations and laws; and thereby show said drivers the importance of, and inculcate in them a desire to observe, the fundamental precepts and practices of safe driving.' "

Plaintiff argues that the safety regulation can be reasonably interpreted only if it is held to apply to all drivers of public passenger vehicles. However, the terms of other sections must be examined in order to determine the scope and coverage intended by this Public Utilities Commission regulation.

Section 1.18 of general order No. 98 provides in relevant part: " . . . said rules and regulations shall apply to every passenger stage and trolley coach . . .;" section 2.03 defines driver as one who " . . . drives or is in actual physical control of a passenger stage or trolley coach . . .;" and section 2.02 defines trolley coach as a vehicle " . . . propelled by electric power . . . *but not operated upon rails.*" (Italics added.) It is thus apparent that the safety regulation had no application to the driver or operator of the rail streetcar in the instant case for this car was "operated on rails." It was therefore error to give the instruction which quoted the regulation.

Whether the error was prejudicial must be predicated on whether it " . . . appears probable that a different result would have obtained but for the giving of the inapplicable instruction." (*Powell* v. *Bartmess,* 139 Cal.App.2d 394, 407 [294 P.2d 150] ; *Smith* v. *Sugich Co.,* 179 Cal.App.2d 299, 313 [3 Cal.Rptr. 718] ; *Yockel* v. *Hatley,* 172 Cal.App. 2d 1, 4 [341 P.2d 816].) From the evidence adduced at the trial, it seems unlikely that a jury would have come to a conclusion different from that at which the jury in the instant case arrived.

To begin with, the plaintiff had at all times the benefit of

the doctrine of res ipsa loquitur, which would have supported a judgment even without any further evidence of negligence. (*Hardin* v. *San Jose City Lines, Inc.*, 41 Cal.2d 432 [260 P.2d 63].) The inference of negligence arising from res ipsa loquitur is strongest where defendant owes plaintiff the highest duty of care, such as is imposed on a carrier of passengers. (*Freitas* v. *Peerless Stages, Inc.*, 108 Cal.App.2d 749 [239 P.2d 671, 33 A.L.R.2d 778].) The carrier, to prevail, must meet the inference of negligence, imposed by the doctrine, by evidence sufficient to offset or balance it. (*Hardin* v. *San Jose City Lines, Inc., supra.*) In the case at bar, it appears from the evidence that not only did the defendant fail to meet the inference of negligence so as to offset or balance it, but that within the testimony of defendant's own witnesses (and employees) is additional evidence of negligence which may be considered along with the inference of negligence provided by res ipsa loquitur.

In the first place, defendant's motorman testified that he had been told, in case of an emergency such as occurred in the instant case, to put the streetcar in reverse; he was told that it would not harm the car to do so and that it would bring the streetcar to a stop or at least slow it down in case the brakes went out. Yet, when the motorman realized the brakes on the streetcar did not work as it started down the incline, he did not do what he had been told to do in such an emergency but instead abandoned his driver's seat, ran to the opposite side of the car and began to pump a chain parking brake, which was not an emergency brake at all but a slow-working brake to be used when the car was left in storage. As a result, the streetcar, which started its downhill travel at approximately 10 miles per hour, ended up at the bottom of the incline less than a half minute later going 30 to 35 miles an hour. The 58-ton car jumped the tracks, went 61 feet across the street, collided with four parked moving vans, and partially capsized when it finally stopped. The one action the motorman had been told to take ''by different instructors down through the years'' in such an emergency he did not take.

In the second place, following the accident it was ascertained that the main brake pin or bolt holding the brake rigging together was completely missing. The pin was generally held in place with a soft cotter key. Without the pin, the only useful ''brake'' the car had was the reverse switching action. Defendant's mechanic testified that it was his

practice to ''inspect'' the brake rigging by hitting the main pin from below with a 3-foot iron bar, striking the pin in an upward direction. Then, defendant's superintendent of streetcar maintenance testified that ''nobody would do that'' for the reason that hitting the pin underneath by an iron bar would put stress on the soft cotter key, which could eventually lead to failure or fracture of the cotter key.

In the third place, there was testimony by a defense witness that, although the streetcar and others like it had been built before 1915, there was no program whatever for the replacement of main brake rigging pins; that the missing pin could have been original equipment and never replaced; and that no fluoroscope or other tests by metallurgists had ever been made to see whether such pins were faulty or aged.

Instead of adducing evidence to offset or balance the inference of negligence imposed by the doctrine of res ipsa loquitur (*Hardin* v. *San Jose City Lines, Inc., supra*), it appears that the defendant presented, through its own witnesses, three additional affirmative instances of negligence on defendant's part. It seems improbable that the jury would have found for defendant were it not for the trial court's erroneous instruction, since the quoted regulation's precatory (rather than mandatory) language regarding driver training programs would seem to have been of minimal influence, i.e., it does not appear probable, in the light of the evidence, that the jury would have found for defendant if they had not been told that the Public Utilities Commission had suggested that public carriers institute driver training programs, even if they believed such programs would include the training of rail vehicle drivers. Since the only possible effect the instruction regarding the driver training program could have had was to suggest that the motorman would have been instructed, during driver training, to put the streetcar in reverse in an emergency such as arose in the instant case, it would seem that the jury instruction was harmless inasmuch as there was testimony by the motorman himself that he had in fact been so instructed on many occasions.

Affirmed.

Ashburn, J., and Herndon, J., concurred.